1  Kjell C. Bomark–Noel, Esq. (SBN 147494)
   LAW OFFICES OF BOMARK-NOEL
2  1124 East 14ᵗʰ Street, Suite B
   San Leandro, California 94577
3  (510) 352-1030

4

   ATTORNEY FOR PLAINTIFF:
5  ELIZABETH SANTOS

6

7

8        SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF ALAMEDA

10             UNLIMITED CIVIL JURISDICTION

11

12

13  ELIZABETH SANTOS                    Case No: HG07335828

14              Plaintiff,              FIRST AMENDED
          v.                           COMPLAINT FOR DAMAGES BASED
15                                      UPON:
    MERRITT COLLEGE;                    1.    FAILURE TO PREVENT,
16  SHIRLEY MACK, an individual;              INVESTIGATE AND REMEDY
    and DOES 1-10, inclusive,                 HARASSMENT (FEHA) AND IN
17                                            VIOLATION OF 42 USC §1981.19
              Defendant,               2.    INTENTIONAL INFLICTION OF
18                                            EMOTIONAL DISTRESS
    _____/  3     BREACH OF IMPLIED-IN-FACT
19                                            CONTRACT AGAINST
                                              DEFENDANT MERRITT
20                                            COLLEGE
                                       4.    UNLAWFUL DISCRIMINATION
21                                            BASED UPON RACE AND AGE
                                              AGAINST DEFENDANTS
22                                            MERRITT COLLEGE AND
                                              SHIRLEY MACK
23                                     5.    NEGLIGENT
                                              MISREPRESENTATION
24                                            AGAINST MERRITT COLLEGE

25

26

27

28
    FIRST AMENDED COMPLAINT FOR DAMAGES          1                    CASE NO: HG07335828

1  ELIZABETH SANTOS complains and alleges as follows:

2  ## FACTS COMMON TO ALL CAUSES OF ACTION

3  1. Defendant MERRITT COLLEGE (hereinafter referred to as MERRITT COLLEGE)
4  is a California Institution doing business in the city of Oakland, State of California, County of
5  Alameda, located at 12500 Campus Drive, Oakland, California 94606.

6  2. Defendant SHIRLEY MACK (hereinafter referred to as MACK) is a Librarian of
7  Defendant MERRITT COLLEGE, and in that capacity during all times alleged herein was
8  actively involved in the business affairs of MERRITT COLLEGE. At all times herein
9  mentioned, Defendant MACK was a resident of the State of California.

10  3. The true names and capacities of Defendants names herein as DOES 1-10, inclusive,
11  whether individual, corporate, associate, or otherwise, are unknown to Plaintiff who therefore
12  sues such Defendants by such fictitious names pursuant to California Code of Civil Procedure,
13  §474. Plaintiff is informed and believes that DOES Defendants are California residents.
14  Plaintiff will amend this complaint to show true names and capacities when they have been
15  determined.

16  4. In or about 2005, Plaintiff and Defendant MERRITT COLLEGE entered into an
17  academic agreement wherein, among other things, Plaintiff was a student. The academic
18  agreement further provided for a student to have access to the Library, in which a student would
19  be allowed to use computers, provided by MERRITT COLLEGE within the Library, for
20  educational purposes, including, but not limited to "communicating with Processors."

21  5. During the course of attendance at Defendant MERRITT COLLEGE, Plaintiff
22  attended classes, and regular student privileges from Defendant MERRITT COLLEGE, all in
23  recognition to her academic agreement with Defendant MERRITT COLLEGE as a student.

24  6. On or about October 5, 2005, Plaintiff suffered from a non-school related family
25  emergency in where she was informed her father, who was hospitalized, was diagnosed

1   terminally ill and had less than one month to live. Due to this emergency, Plaintiff needed to

2   contact a Professor to communicate the situation to him. This event became one of many in

3   where Plaintiff needed to communicate with one or more of her Professors.

4       7. On or about September 28, 2005, Plaintiff was emailing one of her Professors in the

5   Library of Defendant MERRITT COLLEGE, regarding a midterm. As Plaintiff was emailing her

6   Professor, the Defendant MACK , who at the time Plaintiff did not have any knowledge of,

7   came up behind Plaintiff and told her to get up and exit. Defendant MACK said to Plaintiff,

8   something to the effect of, "your using the computer for personal use." Plaintiff responded with

9   something to the effect that "I am communicating with my Professor," Plaintiff then showed

10  Defendant MACK the email, however Plaintiff was still forced to leave. Plaintiff felt

11  uncomfortable and was humiliated in front of other younger students. After this incident,

12  Plaintiff complained to the President of Defendant MERRITT COLLEGE. To Plaintiff's

13  knowledge, no action was taken.

14      8. On or about October 5, 2005, Plaintiff was once again emailing one of her Professors,

15  informing her that Plaintiff's father was hospitalized and diagnosed terminally ill, and Plaintiff

16  would be missing a class for the first time. At this time, Defendant MACK approached Plaintiff

17  and told her to get up and exit, while once again accusing Plaintiff of using the computer for

18  personal use. Plaintiff once again complied with Defendant MACK's demands and accusations

19  and exited the library.

20      9. All Plaintiff's Professors informed students that communication outside of class

21  should be through email, due to the fact that classes met once a week. Any problems or anything

22  students did not understand about the class or assignments or pertinent to class attendance or

23  missed classes was to be communicated through email.

24      10. On or about November 2, 2005, at approximately 3:00pm Plaintiff entered the

25  Library and went directly to the computer to print out an assignment for a group project. Plaintiff

26

27

28  FIRST AMENDED COMPLAINT FOR DAMAGES         3         CASE NO; HG07335828

1  was at the computer for less than five minutes when Defendant MACK approached Plaintiff from
2  behind and asked Plaintiff to "get up from the computer and exit the Library," in a harsh tone.
3  Plaintiff then explained to Defendant MACK why she was using the computer, and showed her
4  the list of Professors who Plaintiff corresponds with, however Defendant MACK did not
5  consider it an educational purpose. Defendant MACK repeatedly pointed to a sign that said
6  something to the effect of "do not use for personal use," and repeatedly asked Plaintiff if she
7  understood what the sign said. Out of embarrassment and frustration, Plaintiff left the Library.

8      11.  On many occasions, Plaintiff observed students using the Library computers for
9  what she understood to be personal use, however they were not, on any occasion, observed by
10 Plaintiff to be approached by Defendant MACK. However, Plaintiff was restricted from using
11 the computers for educational purposes.

12     12.  Plaintiff was unable to follow through with assignments given by a student who was
13 the class leader, through email because Plaintiff did not have a personal computer or printer, and
14 was unable to use the Library computers, because Defendant MACK would not allow Plaintiff to
15 use them. The longest Plaintiff had been permitted to stay in the Library to use the computer was
16 less than ten minutes, which is an inadequate amount of time to research and print findings, and
17 respond to her classmates' and/or Professors' emails, including, but not limited to, for group
18 projects, class assignments and/or homework assignments.

19     13. On or about November 2005, Plaintiff was enrolled in eight classes, which totaled 24
20 units. Plaintiff did not buy books for her classes, because it was too expensive. Therefore
21 Plaintiff needed the Library and the computers in the Library as her resources. If Plaintiff was
22 unable to use the computers in the Library, she would have to walk approximately one quarter
23 mile to the Learning Center and then walk back to the library to use the Reference Books.
24 However this was not an economical way to study and complete assignments for Plaintiff,
25 because she would have to go back and forth from the computers in the Learning Center, and the
26
27
28

1    resource books in the Library, using and missing valuable study time.

2        14.  Plaintiff did not have any excess time for matters other than school and her dying

3    father, as Defendant MACK had on many occasions accused her of.  As a student Plaintiff's time

4    was precious and every opportunity to study and complete assignments was taken advantage of.

5        15.  On or about November 6, 2005, a class leader for Plaintiff's weekend class informed

6    Plaintiff that she would be emailing her sixteen pages of information regarding a class project.

7    Plaintiff responded with something to the effect of, "I will print it out in the Library on Monday,"

8    however Plaintiff was too embarrassed to use the computer after the last incident with Defendant

9    MACK, in where Defendant MACK asked Plaintiff to leave in a loud and embarrassing tone in

10   front of other younger students  because she the plaintiff, allegedly was using the computer for

11   personal use.

12       16.  On or about November 8, 2005, Plaintiff was in the Library studying for two quizzes

13   in her "Legal Aspects" class, when Defendant MACK approached Plaintiff and told her to "be

14   quiet," although Plaintiff was not talking.  As the person across the couch from Plaintiff

15   continued to talk, Defendant MACK once again approached Plaintiff and said "quiet!"

16   Embarrassed, Plaintiff decided to leave the couch and use the computer to email her Professor

17   regarding a form he was to send her.

18       17.  Approximately two to five minutes after Plaintiff sat down at the computer,

19   Defendant MACK approached Plaintiff and said something to the effect of, "get up! get up!

20   exit!"  Plaintiff responded with something to the effect of, "enough, enough!"  Plaintiff then got

21   up from the computer and stated something to the effect of, "I am not leaving, and I will continue

22   what I am doing, because I am not violating any rules.  I am reading an email sent to me by my

23   Professor's office secretary."  Plaintiff then showed Defendant MACK the email she was

24   reading, however Defendant MACK refused to acknowledge Plaintiff was using the computer for

25   an educational purpose.

26

27

28

1     18. Plaintiff was a forty-seven year old woman, who was fully aware of the rules of the

2 Library, and did not have excess time to spend using the computer for personal reasons, with a

3 class load of 24 units. She was unfairly singled out and harassed by Defendant MACK.

4     19. On more than one occasion, Defendant MACK ordered Plaintiff to repeat the phrase

5 "do not use for personal use, and do communicate with professors," in increments of three,

6 humiliating and embarrassing the Plaintiff in front of other students and a Librarian Tech.

7     20. After several occasions of being embarrassed and singled out, Plaintiff no longer

8 entered the Library if Defendant MACK was there. On the rare occasions Plaintiff entered the

9 Library and Defendant MACK was there, Plaintiff made sure other Librarians or the Dean of the

10 Library were present, because Defendant MACK did not harass or single out Plaintiff when other

11 peers and/or superiors were present.

12     21. Eventually, Plaintiff stopped going to the Library as often, due to the harassment

13 endured by Plaintiff from Defendant MACK. Plaintiff started to go to the Learning Center for

14 other services, and would then go to the Main Library to use references books. During this time

15 Defendant MACK did not confront Plaintiff, due to the fact that the Dean of the Library, Mr.

16 Cordova, was in the Library in the evenings and Defendant MACK did not confront Plaintiff if

17 any authority figures were present.

18     22. On or about October 9, 2006, Plaintiff and a classmate were studying at a table for a

19 "Anatomy and Physiology" class. Plaintiff and her classmate were whispering to each other and

20 taking notes. Other students in the area were taking loudly while making copies at a nearby copy

21 machine, and a student was playing games on a computer, while another was chatting on Yahoo

22 Messenger. Defendant MACK approached Plaintiff and told Plaintiff something to the effect of,

23 "Be quiet! Go upstairs and get a room." Plaintiff felt singled out and embarrassed, because there

24 were many students in the same area of the Library that were speaking loudly and Defendant

25 MACK did not approach them.

26

27

28  FIRST AMENDED COMPLAINT FOR DAMAGES        **6**        CASE NO: HG07335828

23. On multiple occasions Defendant MACK told Plaintiff to go to the Learning Center to use the computers for personal use. This would cause a great inconvenience for Plaintiff, because all the reference books Plaintiff needed for her classes were in the Library, and due to the fact that Plaintiff was not using the computer for personal use.

24. After many occasions of being harassed, wrongly accused, and embarrassed by Defendant MACK, Plaintiff began to study in her car, only to enter the Library to utilize the restroom. Library employees who noticed Plaintiff stopped using the Library, would approach her when she entered to use the restroom, and would tell Plaintiff when Defendant MACK was not going to be in the Library so Plaintiff could have access to the computers and Reference Books.

25. After each and every incident in where Defendant MACK harassed, wrongly accused, and embarrassed Plaintiff, Plaintiff complained to Mr. Cordova, Dean of the Library.

26. After the second incident, Plaintiff was also told by Judy Singer, a Librarian and Noreen, a Library Tech, to complain to Pamela Price, an individual who does payroll, who would then pass the information up the chain of command. Plaintiff complained to Pamela Price after every incident in where Defendant MACK harassed, wrongly accused, and embarrassed Plaintiff, Ms. Price then passed the information on.

27. On many occasions Plaintiff complained to her Professors about the harassment by Defendant MACK and on occasions Plaintiff's Professors wrote emails in support of Plaintiff's use of the Library computers, in addition to bringing the issue to the attention of the Dean of Real Estate, Mr. Lee.

28. In or about the beginning of May 2005, Plaintiff then complained to Karen Ulrich, Director of Employee Relations, who briefly talked to Plaintiff, and rescheduled another meeting. Karen Ulrich later cancelled that appointment and did not reschedule. Ms. Ulrich wrote in a letter dated January 22, 2007 that an investigation would be conducted by Mark Paschal, a

1   Peralta Community College District EEO investigation consultant. However no further action

2   was taken, and the harassment and false accusations toward Plaintiff, by Defendant MACK

3   continued. Plaintiff also filed a written complaint with Merritt College in compliance with the

4   Government Code, and several written complaints with different departments and Librarians.

5   The said complaint was answered both by telephone calls to Plaintiff, cancelled meeting and by

6   letters dated January 22, 2007 and April 24, 2007. Letters are attached hereto and marked as

7   Exhibit B. Therefore Plaintiff filed this lawsuit to preserve her rights.

8   ### FIRST CAUSE OF ACTION:
9   **FAILURE TO PREVENT, INVESTIGATE, AND REMEDY HARASSMENT IN VIOLATION OF FEHA (CALIFORNIA GOVERNMENT CODE §12940(K))**
10  (Against Merritt College, and in violation of 42 USC §1981.19 against Shirley Mack and DOES 1 through 10, inclusive)

11  29.  Plaintiff repeats and realleges paragraphs 1 through 28 above and incorporates them
12  herein by reference as though set forth in full.
13
14  30.  At all times mentioned herein, the California Fair Employment and Housing Act
15  (FEHA) was in full force and effect, and Defendant, and each of them, were and are subject to
16  FEHA's requirements, as well as 42 USC §1981.19.

17  31.  Plaintiff, while emailing her Professors on the computers in the Peralta College
18  library, which are available to all students, was continuously subjected to racial discrimination
19  and harassment from Defendant SHIRLEY MACK as well as an unwelcome remarks and
20  inappropriate tone toward Plaintiff. Such conduct violates FEHA and 42 USC.§1981.19.

21  32.  The discrimination, harassment, unwelcome remarks, and inappropriate tone were
22  objectively offensive to reasonable students in Plaintiff's circumstances and Plaintiff herself
23  found the conduct offensive.

24  33.  All Defendants were aware of the discriminatory and hostile environment to which
25  Plaintiff was subjected, as well as the fact that she found it offensive and unwelcome, because
26  she complained of the discrimination and harassment. Additionally, the perpetrator of the

27
28  FIRST AMENDED COMPLAINT FOR DAMAGES                8                CASE NO: HG07335828

1   discrimination and harassment was a librarian at MERRITT COLLEGE and therefore her
2   knowledge of her own discriminatory, unlawful, inappropriate, offensive and unwelcome
3   conduct is imputed to his employers. Moreover, the discriminatory environment was well known
4   to students and employees.

5        34.  Under FEHA Defendants were required to take all responsible steps necessary to
6   prevent discrimination and harassment but failed to do so.

7        35.  Moreover, under FEHA, MERRITT COLLEGE was required to take prompt
8   corrective action to address the harassing behavior but failed to do so. Instead, Plaintiff was
9   subjected to continued harassment in violation of California Government Code §§12940(j)(1)
10  and (k) and 42 USC.§1981.19. Defendant MERRITT COLLEGE knew of the ongoing
11  harassment, yet failed to do whatever was necessary to end the harassment, make the Plaintiff
12  whole by restoring lost student benefits or opportunities, and prevent the misconduct from
13  reoccurring. Instead, Defendants took no action. Defendants failed to take appropriate
14  disciplinary action against the harasser intended to stop the harassment. Defendants failed to
15  advise the Plaintiff of the discipline imposed on the harasser. Defendants failed to insure that no
16  further harassment or retaliation against the Plaintiff would occur.

17       36.  Plaintiff has exhausted her administrative remedies by filing a complaint with the
18  FEHA on January 17, 2007 and was issued a RIGHT TO SUE letter on January 22, 2007.
19  Attached hereto and marked as Exhibit A is Plaintiff's Right to Sue letter.

20       37.  As a proximate results of Defendants' conduct, Plaintiff has suffered loss in her right
21  to use the school library to email her Professors, as she does not have a personal computer
22  available to her. Plaintiff is also unable to use the library to study, as Defendant MACK asks
23  Plaintiff to leave.

24       38.  As a further proximate result of Defendants' discriminatory conduct, Plaintiff has
25  suffered depression, loss of self-esteem, illness and emotional distress, all to Defendants' damage
26
27
28

1  in an amount unknown at this time, but according to proof at trial.

2      39.  Defendants committed to acts alleged herein maliciously, fraudulently, and

3  oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and

4  evil motive amounting to malice, and/or in conscious disregard of Plaintiff's rights.  Thus,

5  Plaintiff is entitled to an award of exemplary damages against Defendant Merritt College and

6  punitive damages against Defendant Shirley Mack and DOES 1-10.

7                    SECOND CAUSE OF ACTION:
                INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
8                [Against Shirley Mack and DOES 1 through 10, Inclusive]

9

10     40.  Plaintiff realleges and incorporates paragraphs 1 through 28 above as though set

   forth herein.
11
       41.  Defendants' conduct, as throughly alleged above, was and is extreme and outrageous
12
   conduct amounting to intentional infliction of emotional distress, which was intended to and/or
13
   was done in conscious disregard of the probability of causing Plaintiff to suffer severe emotional
14
   distress in violation of 42 USC.§1981.19.
15
       42.  Defendants' outrageous conduct includes harassment, inducement of stress, and thus
16
   intentional infliction of emotional distress
17
       43.  By the actions described herein, Defendants intentionally and with conscious
18
   disregard, attempted to strip Plaintiff of her dignity and reputation among her peers and
19
   throughout the institution.
20
       44.  As a proximate result of Defendants' aforementioned wrongful conduct, Plaintiff has
21
   suffered and continues to suffer grave emotional distress, including embarrassment, humiliation,
22
   and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof
23
   at the time of trial.
24
       45.  Defendants' conduct was willful, wanton, malicious, and with reckless disregard for
25
   the rights of Plaintiff so as to justify an award of exemplary and punitive damages.
26

27

28  FIRST AMENDED COMPLAINT FOR DAMAGES              10              CASE NO: HG07335828

1

2

3

### THIRD CAUSE OF ACTION:
### BREACH OF IMPLIED-IN-FACT CONTRACT
### AGAINST DEFENDANT MERRITT COLLEGE

4    46.  Plaintiff realleges and incorporates paragraphs 1 through 28 above as though set

5  forth herein.

6    47.  Plaintiff entered into an academic relationship with Defendant MERRITT

7  COLLEGE in or about 2005 as heretofore alleged pursuant to which she agreed to study for

8  which Defendant MERRITT COLLEGE agreed to furnish Plaintiff the necessary academic

9  environment.  During the entire course of Plaintiff's academic pursuit with Defendants, there

10  existed an implied-in-fact academic contract between Plaintiff and Defendant MERRITT

11  COLLEGE, which at the time of Plaintiff's injuries included, but was not limited to, the

12  following terms and conditions:

13    (a)  Plaintiff would be able to continue her academic relationship with Defendants

14  indefinitely so long as she carried out her academic duties in a proper and competent manner;

15    (b)  Plaintiff would not be harassed or impeded in her pursuit of studying and the use of

16  facilities would not be barred unless for  good cause;

17    (c)  Defendants would not evaluate Plaintiff's student activities and bar her from utilizing

18  facilities;

19    (d)  Defendants would provide Plaintiff with support so that she could properly carry out

20  her academic responsibilities.

21    47.  This academic agreement was evidenced by having a student identification card,

22  paying the necessary fees for registration of classes, and other documents that evidenced an

23  academic relationship; oral representations to Plaintiff by Defendants' agents and employees, and

24  the parties' entire course of conduct, including the following:

25    (a)  Defendant MERRITT COLLEGE's written and oral personnel policies and discipline

26

27

28  FIRST AMENDED COMPLAINT FOR DAMAGES                11                CASE NO: HG07335828

1  procedures;

2      (b)  Defendant MERRITT COLLEGE's established policy which was known to Plaintiff,

3  and relied upon her, that a student such as Plaintiff, who had performed her student functions as a

4  good and faithful student, would have a secure academic environment tenure with Defendant;

5  that a student such as Plaintiff would be permitted to continue her academic pursuit unimpaired

6  by harassment and mental distress unless failing to meet the standards of Defendant MERRITT

7  COLLEGE for good and sufficient cause; and that a student such as Plaintiff would not be

8  disciplined or impeded in her academic pursuit without good and sufficient cause;

9      (c)  Again and again during her academic relationship Plaintiff was told by her

10  Professors, orally and in writing, that she was doing a satisfactory or better job. As a result of the

11  above representation, Plaintiff responsibly came to expect to rely on the promise of an academic

12  environment free of harassment and mental distress.  Such statements and acts communicated to

13  Plaintiff the idea that she had performed her student responsibilities and that her academic

14  relationship with Defendant MERRITT COLLEGE was secure.  Plaintiff in good faith relied

15  upon these representations and believed them to be true;

16      (d)  Plaintiff's reliance on, belief in, and acceptance in good faith of all the assurances,

17  promises and representations as listed in Paragraph 43 lead Plaintiff throughout her academic

18  relationship with Defendants to reasonably believe that her academic relationship was secure and

19  that thereby existed a contract of a continuous academic environment with Defendants free of

20  harassment and mental distress, with Defendants.  As independent consideration for this contract

21  of a continuing academic relationship, and as evidence of Plaintiff's reliance thereon, Plaintiff

22  refrained from seeking any other academic environments.

23      48.  Plaintiff undertook and continued her academic relationship with the expectation to

24  be free from harassment, discrimination based on race and age, and free from being singled out

25  as a mature woman in an environment of primarily students under twenty-five years old and duly

26

27

28

1  performed all of the conditions of the contract to be performed by her. Plaintiff in the past has

2  been ready, willing and able to perform, and has offered to perform, all of the conditions of the

3  contract to be performed by her, however in the last two years, due to stress created by

4  Defendants in Plaintiff's academic pursuit, she was unable to complete courses that she would

5  have normally succeeded in.

6       49. Despite the representation made to Plaintiff by Defendants and the reliance she

7  placed upon them, Defendant MERRITT COLLEGE failed to carry out its responsibilities under

8  the terms of the academic agreement in the following ways:

9            (a) By subjecting Plaintiff to arbitrary, unfair, and dishonest criticism.

10      50. As a proximate result of Defendant MERRITT COLLEGE's breach of the academic

11  agreement, Plaintiff has suffered and continues to suffer substantial losses in academic

12  opportunities, and other academic benefit which she would have received had Defendants not

13  breached said agreement, all to her damage in an amount according to proof. Furthermore,

14  Plaintiff registered for classes for the 2007 school year, but was unable to follow through with

15  attending the classes, due to emotional and mental distress caused by Defendants.

16      WHEREFORE, Plaintiff requests relief as hereinafter provided.

17

18            FORTH CAUSE OF ACTION:
       (UNLAWFUL DISCRIMINATION BASED UPON RACE AND AGE
               IN VIOLATION OF 42 USC.§1981.19
19        AGAINST ALL DEFENDANTS AND DOES 1-10 INCLUSIVE)

20

21      51. Plaintiff hereby incorporates by reference paragraphs 1 through 28 of this complaint

   as if set forth herein.

22

23      52. At all times herein mentioned, Government Codes were in full force and effect and

   was binding upon Defendants, and each of them. Said sanctions require Defendants to refrain

24  from discriminating against any student on the basis of race and age, among other things. Within

25  the time provided by law, Plaintiff made a complaint to the California Department of Fair

26

27

28  FIRST AMENDED COMPLAINT FOR DAMAGES                13                CASE NO: HG07335828

1   Employment and Housing ("DFEH"). Plaintiff has now received her right-to-sue letter from the

2   DFEH, a copy of which is attached hereto as Exhibit A and incorporated by reference herein.

3       53. Defendants MERRITT COLLEGE, and DOES 1-10 inclusive, failed to supervise

4   Defendant MACK in the Library where she performed her duties, and failed to properly

5   investigate the actions of Defendant MACK. Defendant MACK, continued harassment and

6   mental anguish and provided an environment of stress for Plaintiff.

7       54. Plaintiff is informed and believes that in addition to the practices enumerated in this

8   cause of action, Defendant MERRITT COLLEGE has engaged in other discriminatory practices

9   which are not fully known by Plaintiff.

10      55. As a direct, foreseeable, and proximate result of Defendants' discriminatory acts,

11  Plaintiff has suffered and continues to suffer substantial loses in education and educational

12  benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and

13  emotional distress, and discomfort, all to her damage in an amount in excess of the minimum

14  jurisdiction of this court, the precise amount of which will be proven at trial.

15      56. Defendants committed the acts herein alleged maliciously, fraudulently, and

16  oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and

17  evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Because the

18  acts taken towards Plaintiff were carried out by managerial employees acting in a despicable,

19  cold, callous, and intentional manner in order to injure and damage Plaintiff, she is entitled to

20  recover punitive damages from Defendants in an amount according to proof.

21      57. As a result of Defendants' discriminatory acts as alleged herein, Plaintiff has no

22  plain, adequate or complete remedy at law and Defendants continue to engage in said alleged

23  wrongful practices. Therefore, Plaintiff requests:

24          (a) That she be made whole and afforded all benefits attendant thereto that would

25  have been afforded Plaintiff but for said discriminatory; and

26

27

28  FIRST AMENDED COMPLAINT FOR DAMAGES                14                     CASE NO: HG07335828

(b) That Defendants, their agents, successors, employees and those acting in, concert with them be enjoined permanently from engaging in each of the unlawful practices, policies, usages and customs set forth herein.

WHEREFORE, Plaintiff prays for judgement as hereinafter set forth.

### FIFTH CAUSE OF ACTION:
#### (NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS MERRITT COLLEGE AND DOES 1-10)

58.  Plaintiff hereby incorporates by reference Paragraphs 1 through 28 and 41 through 45, inclusive, of this complaint as if fully set forth herein.

59.  During the course of Plaintiff's academic relationship with Defendant MERRITT COLLEGE, and each of them, misrepresented to Plaintiff:

(a)  That she would have an academic environment free of stress, harassment and mental anguish;

60.  Defendants, and each of them, when they made their representations of fact to the Plaintiff, which are described in the preceding paragraph, had no reasonable grounds for believing the representations were true, and Defendants, and each of them, made their representations with the intent to induce Plaintiff to take the actions herein alleged. Defendants' representations were made with the intent that Plaintiff rely upon them, and Plaintiff did reasonably rely upon them to her detriment.

61.  In making such representations of fact, and in suppressing and failing to disclose facts material to Plaintiff's employment relationship as described in Paragraphs 56 and 57 above, Defendants negligently misled the Plaintiff about her prospects for educational stability. Defendants, and each of them, knew or reasonably should have known that Plaintiff would rely upon the Defendants' representations and Defendants' failure to disclose facts material to her academic relationship. Plaintiff did rely on the Defendants' misrepresentations and failure to disclose material facts to her detriment.

---

62.  As a direct, foreseeable, and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered and continues to suffer substantial losses in earnings and other academic benefits, and Plaintiff has suffered and continues to suffer pain, discomfort, and anxiety, humiliation, and emotional distress, and will continue to suffer said emotional distress in the future in an amount according to proof.

WHEREFORE, Plaintiff prays for judgement against the Defendants, and each of them, as follows:

(1)  For compensatory damages including lost student benefits, mental and emotional distress, and other special and general damages according to proof;

(2)  For an award of punitive damages on the Fifth Cause of Action on Shirley Mack and DOES 1-10, where allowed by law;

(3)  For an award of interest, including prejudgement interest, at the legal rate, where allowed by law;

(4)  For an award to Plaintiff of costs of suit incurred herein on all causes of action;

(5)  For an award to Plaintiff of Attorneys' fees on the First and Fourth Causes of Actions pursuant to Government Code §12900, et seq and 42 USC.§1981.19, where allowed by law.

(6)  For a permanent injunction enjoining Defendants, their agents, successors and employees and those acting in concert with them for engaging in each of the unlawful practices, policies, usages and customs set forth in the First and Fourth Causes of Actions, where allowed by law.

(7)  For an award to Plaintiff of such other and further relief as this court deems just and proper.

1   DATED: 9/12/2007              LAW OFFICES OF BOMARK-NOEL

2

3                                KJELL C. BOMARK-NOEL, ESQ.
                                 Attorney for Plaintiff:
4                                Elizabeth Santos

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   FIRST AMENDED COMPLAINT FOR DAMAGES          17                    CASE NO: HG07335828

## VERIFICATION

I, ELIZABETH SANTOS, am a Plaintiff in the above-entitled action. I have read the foregoing "FIRST AMENDED COMPLAINT FOR DAMAGES" and know the contents thereof. Under penalty of perjury under the laws of California I affirm the above to be true and correct, to the best of my belief and recollection.

Executed in San Leandro, County of Alameda, State of California.

DATED: Sept 12, 2007

Elizabeth Santos
Plaintiff

EXHIBIT A

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200607 N-0953-00-arc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Ms. Elizabeth D. Santos

TELEPHONE NUMBER (INCLUDE AREA CODE)
(510) 452-0548

ADDRESS
433 Perkins #209

CITY/STATE/ZIP
Oakland, California 94610

COUNTY
Alameda

COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Shirley Mack

TELEPHONE NUMBER (include Area Code)
(510) 436-2457

DFEH USE ONLY

ADDRESS
12500 Campus Drive

CITY/STATE/ZIP
Oakland, California

COUNTY
Alameda

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)
4,000 + Students

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) January 2007

RESPONDENT CODE

THE PARTICULARS ARE:

On Sept. 28, 2005 - Present I was [X] harassed / graphic characteristics testing, denied access to the computers based on race,

by Shirley Mack    Librarian
Name of Person    Job Title (supervisor/manager/personnel director/etc.)

because of my: [X] race [X] age [X] national origin/ancestry [X] retaliation (Circle one filing: Protesting; participating in investigation (retaliation for)

the reason given by Shirley Mack, Librarian
Name of Person and Job Title

Was because [please state what you believe to be reason(s)] I am Asian, and because of my age she does not want me to use the computer, and kicks me out of the library.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complaint Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 1/13/07

City San Leandro

COMPLAINANT'S SIGNATURE

RECEIVED

DATE FILED: January 17, 2007    JAN 17 2007

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

Department of Fair Employment and Housing Oakland District Office

STATE OF CALIFORNIA

EXHIBIT A



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGE...                                ARNOLD SCHWARZENEGGER, Governor

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941' TTY (800) 700-2320' Fax (510) 622-2951
www.dfeh.ca.gov

January 22, 2007

ELIZABETH D. SANTOS
433 Perkins, #209
Oakland, CA 94610

RE:    E200607M0953-00-arc
       SANTOS/SHIRLEY MACK

Dear ELIZABETH D. SANTOS:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 17, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

EXHIBIT A₂

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless the
case is still open at the end of the three-year period.

Sincerely,

Allen H. Pederson

Allan H. Pederson
District Administrator


cc:    Case File


Shirley Mack, Librarian
12500 Campus Drive
Oakland, CA  94619

EXHIBIT A₃

EXHIBIT B



# Peralta Community College District

333 East Eighth Street · Oakland, California 94606 · (510) 466-7200

January 22, 2007

SENT VIA U.S. MAIL and CERTIFIED, RETURN RECEIPT 7002 2030 0003 6233 6863

Elizabeth Santos
433 Perkins Street, #209
Oakland, CA 94610

Dear Ms. Santos:

This is to confirm that I met with you briefly on January 11, 2007, to discuss your concerns of harassment by Ms. Shirley Mack. At that time we scheduled another meeting with Ms. Mack, Hector Cordova, Ms. Mack's manager, you and myself to be held on Thursday, January 18, 2007. Due to Ms. Mack's unavailability on January 18th, the meeting was cancelled. Because I am unable to ensure Ms. Mack's attendance next week and to avoid a delay in addressing your allegations involving Ms. Mack, my office will not attempt to schedule another meeting but will instead pursue an investigation of your allegations against Ms. Mack.

Mr. Mark Paschal, a Peralta Community College District EEO investigation consultant, will be conducting this investigation and will be contacting you within the next day or two to schedule an investigative interview with you. Mr. Paschal will also interview Ms. Mack and any relevant witnesses related to this case.

Enclosed is my business card with my telephone number and email address. If you have any questions, please feel free to contact me.

Sincerely,

Karen Ulrich
Director of Employee Relations

Cc: Hector Cordova

EXHIBIT B

College of Alameda          Laney College          Merritt College          Vista Community College



# Peralta Community College District

333 East Eighth Street · Oakland, California 94606 · (510) 466-7200

April 24, 2007

Elizabeth Santos
433 Perkins Street, #209
Oakland, CA 94610

Subject: Investigation into Allegations of Harassment

Dear Ms. Santos:

The District has concluded its investigation into allegations by you that you were harassed by Ms. Shirley Mack and that your rights were violated. Below are the findings and determinations from that investigation.

**GENERAL ALLEGATIONS:**
You allege that you have been subjected to harassment and violation of your rights, to include abuse of power and being bullied for about one year. You allege that the harassment was directed at you by District employee, Shirley Mack, and has taken place at Merritt College.

**SPECIFIC ALLEGATIONS:**

You allege that there were three specific incidents of harassment which are connected to the use of the Library computer, as follows.

1. You wrote that the first incident occurred on September 28, 2005. You wrote that you were e-mailing Mr. Grant (an instructor) regarding a midterm examination.

2. On October 5, 2005, you wrote that you were in the process of writing a note to your Legal Aspects Instructor and to Mr. Watts to notify them of an emergency absence.

3. On November 2, 2005, you wrote that you became most upset when respondent made you get up from a library computer and turn it off. You further wrote that you were working on a roster for your group project, connected with your Property Management class. According to you, respondent accused you of e-mailing something that was not

EXHIBIT B2

College of Alameda          Laney College          Merritt College          Vista Community College

Page 2
Elizabeth Santos

related to your class project. You wrote that you were "mature enough not to violate the rules...I think of this as discrimination...I will file a lawsuit if this is not taken care of.

4. On November 8, 2005, you wrote that you walked into the library with the intention to review some information for your Legal Aspects class quizzes, and do some reading for your Appraisal class (chapter 12). You also wrote that you needed to send an e-mail to Instructor Forkner as per his instructions. You wrote that again respondent interfered with your legitimate use of library facilities. You wrote that at a later point you wanted to e-mail Mr. Forkner. The respondent began harassing you again stating that you were using the computer for personal use. You stated that you tried to explain that it was not personal use. You added that at that time the computer section had no users – "it was empty," you wrote. Respondent asked you to leave, reminding you that you must notify her (respondent) when e-mailing. You responded that you informed Noreen about your computer use. Respondent stated that Noreen is not a Librarian - she is a Librarian Technician. Respondent then made you repeat the words "do not use for personal e-mail," three times. You wrote that you refused to leave, you showed respondent (as you had before) that you were using the computer for school related matters. You wrote that due to the situation you were stressed emotionally and you sought out to complain to the administration. You went to the Q building and a secretary there told you to write a letter and return it to her.

## REVIEW OF DOCUMENTS SUBMITTED BY RESPONDENT:

As part of the support documentation for her testimony, respondent submitted documents that were reviewed as part of this investigation.

## REPORT CONCLUSIONS:

After a careful review of the facts and circumstances as noted above this investigation finds the following:

1. The evidence was insufficient to show that respondent physically bullied you, the complainant. There was no evidence to show that respondent raised her voice or touched or pushed you. The evidence shows that respondent confronted you in a normal tone in her efforts to enforce the library rules concerning your use of District computers.

2. The evidence revealed that respondent aggressively enforced the library use rules to a greater extent than that of her colleagues. In interviews, it was revealed that respondent maintained her own approach in the enforcement of these rules.

EXHIBIT B3

Page 3
Elizabeth Santos

3. Through interviews of witnesses it was determined that your subject use of the District computers was, in fact, for your classes and was thus legitimate.
4. The evidence shows that in spite of faculty and staff meetings that included Dean Hector Cordova, there was no agreement reached with respondent regarding insuring her enforcement of the computer use rules which were not consistent with the College's expectations in this regard.
5. The evidence shows that as a result of your frustration and feeling "picked on," you reacted by shouting at respondent and other library officials. There were written statements from students and Librarian Marianne who testified that you lost your temper in the library and would begin shouting at staff.
6. The evidence shows that Dean Cordova made reasonable attempts to meet with you in an effort to resolve the conflict. The Dean's efforts to meet with you were unsuccessful – after numerous attempts (six calls made to your home) you elected not to meet with the Dean.

The following are suggestions that could help resolve issues raised in this case. They are as follows:

*1. Investigation Findings: Although the library administration has established rules and guidelines regarding student use of computers, this investigation finds that there are no uniform guidelines for implementation of those rules. As a result respondent developed her own very aggressive approach that led to the conflict with complainant and ultimately the rest of the library staff.*
The administration should develop a single set of procedures to monitor student use of District computers in the Library. The administration should consider input from Librarians, Technicians, students etc. for the development of the procedure.

*2. Investigative Findings: This investigation found that there was no formal training program developed for new employees. Newly hired employees received training based on the librarian that was available. You, in this case had a conflict with a newly hired library technician that was trained by the respondent.*
The administration should develop training for new employees to ensure consistent monitoring of student use of equipment.

*3. Investigative Findings: After it was determined that your use of District computers was legitimate and appropriate, there was no administrative action taken to protect you from further overly aggressive enforcement by respondent.*

EXHIBIT B4

Page 4
Elizabeth Santos

The administration should take the appropriate steps to insure that respondent discontinues her current approach of enforcement of the Library's computer use policies, and trains her on an enforcement approach that is consistent with the Districts expectations in this regard.

The administration should send a letter to you apologizing for the overaggressive approach by respondent and invite you back to utilize the library again. The letter should advise you that raising her voice and shouting at staff is not appropriate to resolve any conflicts that could arise. You should be advised to seek the appropriate District official if you have an issue with any of the library staff.

This concludes the investigation into this matter. If you have any questions or concerns, please feel free to contact me at (510) 466-7252.

Sincerely,

Karen Ulrich
Director of Employee Relations

EXHIBIT B5

ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKAGE
Effective April 15, 2005

## Instructions to Plaintiff / Cross-Complainant

In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the complaint, an Alternative Dispute Resolution (ADR) information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . . .

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) Court may make package available on Web site . . .

(c) The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.

## GENERAL INFORMATION ABOUT ADR

## Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

## Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- ADR can be speedier. A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- ADR can save money. Court costs, attorney fees, and expert witness fees can be saved.

- ADR can permit more participation. With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- ADR can be flexible. The parties can choose the ADR process that is best for them.

- ADR can be cooperative. In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- ADR can reduce stress. There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

Rev 4/05

## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- Visit the Court's Web site. The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- Contact the Small Claims Court Legal Adviser. The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- Visit the California Department of Consumer Affairs' Web site. The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediat1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- Contact your local bar association. You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

  Look in the yellow pages of your telephone book under "Arbitrators" or "Mediators."

  Automotive Repair, Smog Check: The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- Attorney Fees: The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
222278 Redwood Road, Castro Valley, CA 94546
Phone: (510) 733-4940   fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teen Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Phone: (510) 548-2377   fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
433 Jefferson Street, Oakland, CA 94607
Phone: (510) 768-3100   fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
1789 Barcelona Street, Livermore, CA 94550
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
1212 Broadway Street, Suite 837, Oakland, CA 94612
Phone: (510) 444-6351   fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

## ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

Appointment of Arbitrator (must be appointed within 30 days after referral per *CRC 1605*).
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

Assignment of Case *(CRC 1605a(4))*
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

Hearings *(CRC 1611)*
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

Award of Arbitrator *(CRC 1615b & c)*
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

### Return of Case to Court
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

Case No.: _____

                                    Plaintiff

vs.

                                                    **STIPULATION FOR ALTERNATIVE
                                                    DISPUTE RESOLUTION (ADR)**

                                    Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

                                            _____
                                            JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

1  Kjell C. Bomark-Noel, Esq. (SBN 147494)
   LAW OFFICES OF BOMARK-NOEL
2  1124 East 14th Street, Suite B
   San Leandro, California 94577
3  (510) 352-1030

4  Attorney for Plaintiff:
   Elizabeth Santos

5

6

7                    SUPERIOR COURT OF CALIFORNIA

8                       COUNTY OF ALAMEDA

9                      UNLIMITED JURISDICTION

10

11  ELIZABETH SANTOS                    Case No: HG07335828

12              Plaintiff,              NOTICE OF UNAVAILABILITY
                v.                      OF COUNSEL
13
    SHIRLEY MACK,  MERRITT COLLEGE
14  and DOES 1 through 10, inclusive

15              Defendants.
                                    /
16
    TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:
17
         NOTICE IS HEREBY GIVEN that commencing on Monday, September 17, 2007, and
18
    continuing through Wednesday October 17, 2007, and also Saturday October 27, 2007
19
    continuing through Sunday November 4, 2007, KJELL C. BOMARK-NOEL of Law Offices of
20
    Bomark-Noel, the attorney of record for the Plaintiff, in the above captioned action, will be
21
    absent from his office and unavailable for any purpose whatsoever in the above captioned action,
22
    including but not limited to receiving notices of any kind, responding to any kind of notices,
23
    *exparte* applications, responding to motions, appearing in Court, appearing at arbitration and/or
24
    responding to discovery.  Kjell C. Bomark-Noel will be out of the state, and on Military orders
25
    for part of this period.  Attorney Brian Ross will be available on an emergency basis, however do
26
    not schedule anything in these time periods.  Brian Ross can be reached at (510) 483-3900, if you
27
    must contact him, please be specific about the case, parties and issue.
28

                                        1

1    NOTICE IS HEREBY FURTHER GIVEN that intentional scheduling of any of the

2  above during said time period will result in a request for sanctions pursuant to the provisions of

3  Code of Civil Procedure Section 128.5 and the holding in *Tenderloin Housing Clinic, Inc vs.*

4  *Sparks* (1992) 8 Cal.App.4th299, 10 Cal.Rptr.2d371.

5

6  Dated: September 14, 2007

7                                                  Kjell C. Bomark-Noel, Esq.
                                                   Attorney at Law

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1   RE:   Santos v. Merritt College et al.
          Alameda County Superior Court Case No. HG07335828
2

                              PROOF OF SERVICE
3
            I am employed in the County of Alameda, State of California. I am over the age of eighteen
4   years and not a party to the within action. My business address is Law Offices of Bomark-Noel, 1124
    East 14th Street, Suite B, San Leandro, California 94577.
5
            On the below date I served the attached:
6
    NOTICE OF UNAVAILABILITY OF COUNSEL
7
    in the matter of *Santos v. Merritt College et al.* on the parties to this action by placing a true copy
8   thereof in a sealed envelope, addressed as follows:

9   Stephanie B. Bradshaw, Esq.            *Attorney for Defendant*
    Gordon & Rees LLP
10  275 Battery St 20FL
    San Francisco, CA 94111
11

12

13      [X]   BY MAIL I caused such envelope to be delivered through the United States Postal
              Service by putting in an envelope and sending to the addressee noted above.
14
        [ ]   BY FACSIMILE I caused the said document to be transmitted by facsimile machine
15            to the number indicated after the address noted above.

16
        I declare under penalty of perjury under the laws of the State of California that the foregoing is
17  true and correct.

18      Executed on September 13, 2007 in San Leandro, California.

19

20                                          Ashley Jorstad
21                                          Secretary for Kjell C. Bomark-Noel

22

23

24

25

26

27                                    PROOF OF SERVICE

28                                          1