

1  STEPHANIE B. BRADSHAW (SBN: 170757)
   ALYSON CABRERA (SBN: 222717)
2  GORDON & REES LLP
   Embarcadero Center West
3  275 Battery Street, Suite 2000
   San Francisco, CA 94111
4  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
5
   Attorneys for Defendants
6  MERRITT COLLEGE
   and SHIRLEY MACK
7
8
              UNITED STATES DISTRICT COURT
9
            NORTHERN DISTRICT OF CALIFORNIA
10

11  ELIZABETH SANTOS                  )  CASE NO. C 07 5227 EMC
                                      )
12                   Plaintiff,       )  STATEMENT OF RECENT
                                      )  DECISION RELEVANT TO
13         vs.                        )  DEFENDANTS' MOTION TO
                                      )  DISMISS PLAINTIFF'S FIRST
14  MERRITT COLLEGE, SHIRLEY MACK, an )  AMENDED COMPLAINT [Local
    individual and DOES 1-10, inclusive, )  Rule 7-3(d)]
15                                    )
                     Defendants.      )  Date:      December 12, 2007
16                                    )  Time:      10:30 a.m.
                                      )  Judge:     Hon. Edward M. Chen
17                                    )  Location:  Courtroom C, 15th Fl.
                                      )
18                                    )
                                      )
19  _____)

20

21         Pursuant to Local Rule 7-3(d), Defendants PERALTA COMMUNITY COLLEGE

22  DISTRICT and SHIRLEY MACK ("Defendants") hereby give notice of a recent judicial

23  decision, *Pittman v. State of Oregon*, issued December 5, 2007. This decision is relevant to

24  Defendants' Motion to Dismiss, which is currently pending, and for which the opposition and

25  reply briefs have not yet been filed. In *Pittman*, the Ninth Circuit Court of Appeals affirmed the

26  dismissal of an employment discrimination claim brought under 42 U.S.C. Section 1981

27  ("Section 1981") against the Employment Department of the State of Oregon on the ground that

28  states and arms of the state may not be sued under Section 1981. The Ninth Circuit held that this

                                    - 1 –

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

ASCI/1046743/5250364v.1

1    is true independent of sovereign immunity, and thus is not defeated by removal.  See *Pittman v.*

2    *State of Oregon*, Docket No. 05-35900, 07 C.D.O.S. 13861.

3         A copy of this decision is attached hereto as **Exhibit A**.

4

5    Dated:  December 6, 2007                    GORDON & REES LLP

6

7                                          By: _____

8                                               ALYSON CABRERA
                                                Attorneys for Defendants
                                                MERRITT COLLEGE and
9                                               SHIRLEY MACK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

- 2 –

STATEMENT OF RECENT DECISION RELEVANT TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT   C 07 5227 EMC

# EXHIBIT A

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HELEN F. PITTMAN,
                    *Plaintiff-Appellant,*

                v.

STATE OF OREGON, Employment
Department; DEBORAH LINCOLN,
Director of the Employment
Department,
                    *Defendants-Appellees.*

No. 05-35900

D.C. No.
CV-05-00509-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
November 9, 2007—Portland, Oregon

Filed December 5, 2007

Before: Raymond C. Fisher and Marsha S. Berzon,
Circuit Judges, and Judith Barzilay, Judge.*

Opinion by Judge Berzon

---

*The Honorable Judith Barzilay of the United States Court of International Trade, sitting by designation.

15909

## COUNSEL

Glenn Solomon, Portland, Oregon, for the plaintiff.

Marc Abrams, Oregon Department of Justice, Salem, Oregon, for the defendant.

## OPINION

BERZON, Circuit Judge:

Helen Pittman appeals from dismissal of an employment discrimination claim brought under § 1981 against the Employment Department of the State of Oregon. The district court dismissed the § 1981 action, holding that the statute does not provide a cause of action against states. We affirm.

## FACTS

On March 30, 2005, plaintiff Helen Pittman, an African-American woman, filed a complaint in Multnomah County Circuit Court alleging employment discrimination on the basis of race and naming as defendants the State of Oregon Employment Department and Deborah Lincoln, Director of the Employment Department. Pittman brought her claim against the Employment Department under 42 U.S.C. § 1981, and her claim against Lincoln under 42 U.S.C. § 1983. In her complaint, Pittman alleged that the Employment Department was "an administrative agency and a subdivision of the State of Oregon that does business in Mutlnomah [sic] County."

On April 12, 2005, defendants removed the case to federal court and then moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). In their motion to dismiss, defendants argued that there is no right of action to sue a state under either § 1981 or § 1983, and that a state, "regardless, is immune from such suits under the 11th Amendment to the United States Constitution."[1]

On August 8, 2005, the district court issued an opinion and

---

[1]Defendants further contended that Deborah Lincoln was not properly a party to the action because she had not been served. The court held that Lincoln had not been properly served, and dismissed the action against her. That ruling has not been challenged on appeal.

order in which it granted the defendants' motion to dismiss. Addressing Pittman's § 1983 claim, the district court noted that states are not "persons" for purposes of § 1983, so Pittman could not proceed under that statute against the Employment Department. Turning to Pittman's § 1981 claim, the district court held that the State of Oregon waived its Eleventh Amendment immunity by removing the case to federal court, but agreed that § 1981 does not permit actions against a state, citing the Supreme Court's decision in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). Pittman then filed this appeal, contesting only the district court's dismissal of her § 1981 action against the Employment Department.

## ANALYSIS

Under this circuit's case law, § 1981 contains a right of action against municipalities. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996). The plaintiff maintains that *Federation* should be extended to permit a § 1981 cause of action against a state, while the State contends otherwise. After surveying the statutory language and history in light of governing case law, we must agree.

[1] A.   We begin by recounting the historical background of the issue before us. Prior to the amendments brought about by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, 42 U.S.C. § 1981 provided:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Supreme Court interpreted this language to prohibit racial discrimination by both private parties and state entities in the making and enforcement of contracts. *See Runyon v. McCrary*, 427 U.S. 160, 168-171 (1976); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (concluding that Title VII burden-shifting framework applied to claims of discrimination by private employers under § 1981) (superseded on other grounds by the Civil Rights Act of 1991). *Cf. Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441-43 (1968) (holding that in enacting § 1982 — which, like § 1981, was part of § 1 of the Civil Rights Act of 1866 — Congress intended to reach both private discrimination and discrimination under color of state law).[2]

   [2] Having held that § 1981 by its terms prohibits private discrimination as well as discrimination under color of state law, the Supreme Court in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), considered whether § 1981 created a *private right of action* to enforce that prohibition against state actors. Pointing to the fact that the Civil Rights Act of 1866, as originally enacted, contained a penal provision "explicitly directed at state officials" while "nowhere . . . provid[ing] for an express damages remedy for violation of" § 1981, the Court concluded that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Id.* at 720-721, 733. The Court thus held that the prohibition on discrimination by a state or its officials contained in § 1981can be enforced against state actors only by means of § 1983. The primary practical consequence of that holding, highlighted in *Jett*, was that actions for vicarious liability would not lie against state actors

---

[2]42 U.S.C. § 1982 provides:

   All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

because of the "custom or policy" limitation on actions
against municipalities under § 1983. *See Jett*, 491 U.S. at 735-
36 (holding that, because § 1983 is the exclusive remedy for
violation of § 1981 by a state actor, "petitioner must show that
the violation of his right . . . was caused by a custom or policy
within the meaning of *Monell*") (quotation marks omitted);
*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,
690-91 (1978).

[3] Two years after *Jett*, Congress passed the Civil Rights
Act of 1991, Section 101 of which added two new subsections
to 42 U.S.C. § 1981. The new subsection (c) provides:

>   (c) Protection against impairment

>   The rights protected by this section are protected
>   against impairment by nongovernmental discrimina-
>   tion and impairment under color of State law.

In their reports on the bill, the House Education and Labor
Committee and the House Committee on the Judiciary both
indicated that the purpose of subsection (c) was to codify
*Runyon v. McCrary*. *See* H.R. REP. No. 102-40(I), at 92
(1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 630 (citing *Run-
yon* and stating that § 1981(c) "confirms section 1981's cov-
erage of both public and private sector employment"); H.R.
REP. No. 102-40(II), at 37 (1991), *reprinted in* 1991
U.S.C.C.A.N. 694, 731 (subsection (c) "is intended to codify
*Runyon v. McCrary*"). The legislative history of the subsec-
tion nowhere makes reference to *Jett*, or to the availability of
a private cause of action against states or state officials.

Pittman contends that the addition of subsection (c) to
§ 1981 overruled *Jett* to create a cause of action against both
municipalities and arms of the state. Pittman does not con-
tend, nor would the language of the statute suggest, that the
amendment explicitly created a right of action against arms of
the state. She argues, however, that subsection (c) contains an

*implied* right of action against both municipalities and state actors.

In determining whether a statute contains an implied private right of action, this circuit continues to look to the four-factor test outlined in *Cort v. Ash*, 422 U.S. 66 (1975). *See Orkin v. Taylor*, 487 F.3d 734, 738 (9th Cir. 2007). Under *Cort*, courts consider:

> 1)  "[I]s the plaintiff one of the class for whose *especial* benefit the statute was enacted"? *Cort*, 422 U.S. at 78 (quotation marks omitted).
>
> 2)  "[I]s there any indication of legislative intent, explicit or implicit, either to create . . . a [federal] remedy or to deny one"? *Id.*
>
> 3)  "[I]s it consistent with the underlying purposes of the legislative scheme to imply such a remedy"? *Id.*
>
> 4)  "[I]s the cause of action one traditionally relegated to state law"? *Id.*

Although we continue to consider the four factors outlined in *Cort*, we also note that subsequent Supreme Court decisions have clarified that "legislative intent" is the "most important inquiry." *See Orkin*, 487 F.3d at 739; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979) (the "central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action").

All of the other circuits to reach the question have held that the 1991 amendments and the addition of subsection (c) did not overrule *Jett*, and that there is still no cause of action against municipalities or other state actors. In *Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000), for example, the Eleventh Circuit analyzed both the language of the statute and

the legislative history of the amendments and concluded that there was no evidence of "Congress' desire to alter the Supreme Court's conclusion in *Jett*." *Id.* at 894. Examining the language of the amendments, *Butts* determined that it is "clear that [§ 1981(c)] creates a right that private or state actors may violate but does not itself create a remedy for that violation." *Id.* As to the legislative history, the court noted that the purpose of the amendment was "to codify the Supreme Court's decision in *Runyon v. McCrary*." *Id.*; *see also Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("[E]ven after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983."); *Oden v. Oktibbeha County*, 246 F.3d 458, 463-64 (5th Cir. 2001) (no private cause of action against state actors under § 1981 even after the amendments); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) (§ 1981(c) did not "overrule *Jett*'s holding with respect to municipal liability but only [codified] *Runyon v. McCrary*").

[4] We, however, in *Federation of African-American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), concluded that the addition of subsection (c) overruled *Jett* to create a cause of action against *municipalities*. In reaching this holding, we acknowledged that "the amended 42 U.S.C. § 1981 does not expressly authorize private claimants to sue state actors directly." *Id.* at 1210. But we held that "the amended 42 U.S.C. § 1981 contains a cause of action against state actors." *Id.* at 1214.

Applying the *Cort* factors, the court determined that "the statute, by its plain terms, creates federal civil rights in favor of a class of persons that include[d]" the plaintiffs, a group of African-American contractors who alleged that they had been discriminated against on the basis of race by the city of Oakland. *Id.* at 1211. As to legislative intent, the court held that, although Congress did not mention an intent to overrule *Jett*, it did intend to provide "parallel protection against private and governmental entities":

> Because § 1981(c) affords *identical protection*
> against 'impairment by nongovernmental discrimina-
> tion' and 'impairment under color of State law,' and
> because § 1981(c) implicitly codifies an implied
> cause of action against private defendants, we infer
> that § 1981(c) *also* contains an implied cause of
> action against state actors who 'impair' a claimant's
> § 1981 rights.

*Id.* at 1213.

The court went on to hold that actions against state actors
who violate federal civil rights "have *not* been traditionally
relegated to state law," and that a cause of action was not
inconsistent with the underlying purposes of the legislative
scheme. *Id.* at 1213-14. In reaching this final conclusion, the
court acknowledged that there was already a remedy for vio-
lations of § 1981 by municipalities under § 1983. It noted,
however, that "there is no alternative enforcement mechanism
in the revised 42 U.S.C. § 1981 itself," and that implying a
cause of action against municipalities under § 1981 "imposes
no substantive change on federal civil rights law," because
such actions were already possible under § 1983.[3] *Id.* at 1214.
Notably, the argument that § 1981 contains a cause of action
against municipalities was raised in *Federation* in an attempt
to free plaintiffs from the obligation to demonstrate a "policy
or custom" as required under *Monell* to impose liability on
local government units under § 1983. *Id* (noting that appeal

---

[3]Although *Federation* refers in parts to "state actors," it is clear from
the context of the entire opinion — and from *Federation*'s observation
that its decision would not create a substantive change in the law — that
it focused only on private causes of action against municipalities and other
local government units. *Federation* involved a challenge to discrimination
by Alameda County. *Fed. of African American Contractors v. City of Oak-
land*, 96 F.3d at 1205. (Although the caption continued to list "City of
Oakland" as the first defendant, *Federation* involved an appeal from dis-
missal of the contractors' first amended complaint, which named only
Alameda County as a defendant).

presents the issue whether § 1981(c) overrules *Jett*, "and, if
so, whether the Act relieves plaintiffs from alleging that their
civil rights were violated as a result of an official 'policy or
custom' "). *Federation* ultimately held on the latter question
that the "policy or custom" requirement pertains to municipal-
ities sued under § 1981. 96 F.3d at 1215. The result, as *Feder-
ation* stressed, was that the availability of a cause of action
under § 1981 worked no practical change in the outcome that
would have obtained under *Jett*. *Id.* at 1214.

B.   Pittman argues that the reasoning of *Federation* necessar-
ily applies not only to municipalities, but to arms of the state.
The argument is a substantial one in two respects. First, the
language of § 1981(c) itself does not support any distinction
between municipalities and arms of the state. The statute
merely affirms that it prohibits discrimination "under color of
law," and both municipal actors and arms of the state act
"under color of law." Second, much of *Federation*'s analysis
of whether it is appropriate to imply a private right of action
does not depend on any distinction between municipalities
and state entities. The statute, by its plain terms, creates rights
in favor of individuals who have been discriminated against
in employment on the basis of race. Further, causes of action
against state actors for violation of federal civil rights have
also not traditionally been relegated to state law.

[5] We nonetheless reject the extension of *Federation* to
suits against arms of the state, for other reasons we conclude
are more weighty. Most notably, the reasoning of *Federation*
depended in part on its conclusion that implication of a cause
of action against municipalities under § 1981 "imposes no
substantive change on federal civil rights law," because it
does not expand the remedies available under § 1981 beyond
those already available under § 1983. *Id.* The Employment
Department argues that, in contrast, recognizing a cause of
action against state actors under § 1981, would, in fact,
expand the remedies available under that statute beyond those
available under § 1983. On examination, that is so.

As the Supreme Court has applied the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Municipalities, in contrast, are not entitled to sovereign immunity in federal court. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001) ("[T]he Eleventh Amendment does not extend its immunity to units of local government."); *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777-78 (9th Cir. 2005) (Eleventh Amendment does not extend to municipal corporations or other political subdivisions that are not arms of the state).

There are, however, exceptions to Eleventh Amendment immunity. When acting pursuant to its authority under § 5 of the Fourteenth Amendment, Congress can abrogate the sovereign immunity of the states. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) (superseded by statute on other grounds). Sovereign immunity also does not bar suits for prospective injunctive relief against individual state officials acting in their official capacity. *See Ex parte Young*, 209 U.S. 123, 156-57 (1908). Moreover, a state may waive its Eleventh Amendment immunity — by, for example, removing an action to federal court, which is what happened in this case. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (by removing to federal court, a state "voluntarily invoke[s]" federal jurisdiction and thereby waives its immunity).

[6] Applying these principles of sovereign immunity to cases under § 1983 and § 1981, courts have held that states enjoy sovereign immunity from suits brought under both statutes. In *Quern v. Jordan*, 440 U.S. 332 (1979), the Supreme Court made clear that § 1983 "does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States" as required for an abrogation of sovereign immunity. *Id.* at 345. Similarly, we, like all of the courts of appeal that have reached the issue, have concluded

that states enjoy sovereign immunity under § 1981 in the
absence of waiver. *Mitchell v. Los Angeles Cmty. Coll. Dist.*,
861 F.2d 198, 201 (9th Cir. 1988) ("[T]he district is a state
entity that possesses eleventh amendment immunity from the
appellants section 1981, 1983, and 1985 claims."); *see also
Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 890 (8th
Cir. 2005) (joining "other circuits [that] have uniformly held
that a state is immunized from § 1981 liability under the Elev-
enth Amendment"); *Freeman v. Michigan Dep't. of State*, 808
F.2d 1174, 1178 (6th Cir. 1987) (Eleventh Amendment pre-
vents relief against a state under § 1981); *Sessions v. Rusk
State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) (same).

[7] The ability to bring an action against a state is gov-
erned, of course, not only by sovereign immunity, but also by
whether the statute itself creates a cause of action against a
state. As the Supreme Court held in *Jett* that there was no
cause of action against state actors under § 1981, plaintiffs
wishing to enforce § 1981's prohibitions against a state actor
were relegated to the cause of action available under § 1983.[4]
Interpreting § 1983, the Supreme Court has held that the term
"person" under § 1983 encompasses municipalities but not
states. *Monell*, 436 U.S. at 658 (municipalities); *Will v. Michi-
gan Dept. of State Police*, 491 U.S. 58 (1989) (arms of the
state). Under § 1983, then, the availability of sovereign immu-
nity is coextensive with the availability of a cause of action
against a state actor, whether a municipality *or* an arm of the
state. And while Eleventh Amendment sovereign immunity
does not apply in state court, the practical effect of the hold-

---

[4]Section 1983 provides, in relevant part :

Every person who, under color of any statute, ordinance, regula-
tion, custom, or usage, of any State or Territory or the District of
Columbia, subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured in
an action at law, suit in equity, or other proper proceeding for
redress . . . .

ing in *Will* is that actions against arms of the state under both § 1983 and § 1981 cannot be brought in *either* federal or state court, because the cause of action in § 1983 does not reach arms of the state.

For this reason, holding that § 1981(c) creates a cause of action against state actors would bring about some change in federal civil rights law that was not created by allowing actions against municipalities. Such a holding would allow cases in federal court against arms of the state in those instances in which they waive their Eleventh Amendment sovereign immunity, as the State has in this case. Perhaps more importantly, it would allow actions in *state* court against arms of the state for violations of § 1981, at least when the state does not invoke sovereign immunity under its own law in its own courts.

The Supreme Court has instructed that allowing suits against states in state court is a significant alteration in the federal/state balance that must be supported by a clear statement of Congressional intent. In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court addressed the question whether the word "person" in § 1983 includes arms of the state. In holding that it did not, the Court began by noting that "the question whether a State is a person under § 1983 [is] squarely before us since the Eleventh Amendment does not apply in state courts." *Id.* at 63-64. The Court then held that, while "the scope of the Eleventh Amendment and the scope of § 1983 are [ ] separate issues," *id.* at 66, it was appropriate to look to Eleventh Amendment cases requiring that where "Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Id.* at 65 (quoting *Atascadero*, 473 U.S. at 242) (internal quotation marks omitted). The Court viewed it as highly unlikely, given that Congress did not abrogate state sovereign immunity under § 1983, "that Congress intended nevertheless to create a cause of action

against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983."[5] *Id.* at 66. Given these concerns, the Court concluded that § 1983 did not clearly express Congressional intent to create a cause of action against arms of the state.

*Will*, then, suggests that the creation of a right of action against state actors under a civil rights statute, even where there is no question of abrogating the state's sovereign immunity, constitutes an "alter[ation in] the usual constitutional balance between the States and the Federal Government" for which "unmistakably clear language" is required. We do not find it necessary to address here whether "unmistakably clear language" is always required to find an implied right of action against a state under a civil rights statute. *Will* nonetheless suggests that, at the least, there must be *some* evidence of Congressional intent to impose liability on *states* in order to find such an implied right of action.

In fact, neither the language nor the legislative history of the statute suggests any intent to create a private right of action against arms of the state. *Federation* is not to the contrary, as it did not involve the application of *Will*; concerned only municipalities, not states; and stressed that it worked no practical changes in civil rights law because of the absence of sovereign immunity protection for municipalities.

---

[5]While *Will* does provide support for the State's position, it does not do so on the basis the state argues in its brief. The State maintains that a holding that there is a cause of action against a state would, unlike in *Federation*, work a substantive change in civil rights law because "state agencies are immune from lawsuits filed against them under § 1983." But states are also immune from suits in federal court under § 1981. Actions under § 1981 would still be barred by sovereign immunity in federal courts in the absence of waiver. The true differences would be with regard to waived Eleventh Amendment immunity and in the ability to bring § 1981 actions in *state* court.

C.  Our conclusion that § 1981(c) does not create a private right of action against states is bolstered by developments in the Supreme Court's approach to private rights of action that have occurred since this court issued its decision in *Federation*. In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court made clear that, in determining whether a private right of action can be implied from a particular statute, rights-creating language is not determinative:

> . . . [E]ven where a statute is phrased in . . . explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent "to create not just a private *right* but also a private *remedy*."

*Id*. at 284 (emphasis in original) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). Section 1981(c) is phrased "in . . . explicit rights-creating terms," but says nothing about a private remedy, nor does the legislative history.

The holding in *Gonzaga* was not a significant departure from previous Supreme Court case law, which, beginning in the 1970s, has increasingly emphasized the distinction between rights and remedies. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991) ("[R]ecognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy."); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979) ("what must ultimately be determined is whether Congress intended to create the private remedy asserted"). Nor does it lead us to believe that *Federation* can or must be overruled. *See Hulteen v. AT & T Corp.*, 498 F.3d 1001, 1009 (9th Cir. 2007) (en banc) ("A three-judge panel must follow a prior circuit decision unless a subsequent decision by a relevant court of last resort either effectively overrules the decision in a case 'closely on point' or undercuts the reasoning underlying the circuit precedent rendering the cases 'clearly irreconcilable.' "). *Cf. Day v. Apoliona*, 496 F.3d

1027, 1031 (9th Cir. 2007) ("*Gonzaga* and other recent Supreme Court cases concerning § 1983 rights have not so changed the law that it is now irreconcilable with our prior cases"). Nonetheless, the clarity of the Supreme Court's recent command in *Gonzaga* regarding the insufficiency of rights-creating language with regard to the implication of a private cause of action supports our hesitation to extend *Federation* further in the absence of any evidence of Congressional intent to provide a remedy for violations of § 1981 by arms of the state.[6]

## CONCLUSION

[8] For the foregoing reasons, we hold that § 1981 does not contain a cause of action against states. The district court's dismissal of Pittman's § 1981 action against the State of Oregon Employment Department is **AFFIRMED**.

---

[6]We note that, while implied rights of action necessarily require an intent to create a remedy, such an intent is unnecessary for creation of a right enforceable under § 1983. *See Gonzaga*, 536 U.S. at 287 (2002); *Ball v. Rodgers*, 492 F.3d 1094, 1103 (9th Cir. 2007) (holding that the "language of the [Medicaid] free choice provisions is sufficiently rights-creating" to be enforced under § 1983) (internal quotation marks omitted).