1  **Kjell C. Bomark–Noel, Esq. (SBN 147494)**
   LAW OFFICES OF BOMARK-NOEL
2  1124 East 14th Street, Suite B
   San Leandro, California 94577
3  Telephone: (510) 352-1030

4  **Richard C. Harper, Esq. (SBN 99758)**
   LAW OFFICE OF RICHARD C. HARPER
5  7 C Street
   Tracy, California 95376
6  Telephone: (209) 834-2399

7
   **ATTORNEYS FOR PLAINTIFF:**
8  **ELIZABETH SANTOS**

9

10

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14  ELIZABETH SANTOS                    Case No: C 07 5227 EMC

15                      Plaintiff,       **SECOND AMENDED COMPLAINT
                                         FOR PRELIMINARY AND**
16          v.                           **PERMANENT INJUNCTION AND
                                         DAMAGES AND DECLARATION OF**
17  MERRITT COLLEGE;                     **ELIZABETH SANTOS**
    SHIRLEY MACK, an individual;
18  and DOES 1-10, inclusive,

19                      Defendant,

20  _____/

21  ELIZABETH SANTOS complains and alleges as follows:

22              **FACTS COMMON TO ALL CAUSES OF ACTION**

23      1.  Plaintiff ELIZABETH SANTOS is an individual over 18 years of age and a resident

24  of Alameda County, California.  At all relevant times she was enrolled as a student at Defendant

25  MERRITT COLLEGE.

26      2.  This action arises under 42 U.S.C. § 1981, 42 U.S.C. §§ 1981, 1983, 2000d, 6102 and

27

28

6104, the Unruh Civil Rights act, and common law.

3.   Defendant MERRITT COLLEGE (hereinafter referred to as MERRITT COLLEGE) is and at all relevant times, a California Institution doing business in the city of Oakland, State of California, County of Alameda, located at 12500 Campus Drive, Oakland, California 94606 and a recipient of Federal funds for a number of programs and activities.

4.   Defendant SHIRLEY MACK (hereinafter referred to as MACK) was and at all relevant times employed as a Librarian at Defendant MERRITT COLLEGE, and in that capacity during all times alleged herein was actively involved in the business affairs of Defendant MERRITT COLLEGE.  At all times herein mentioned, Defendant MACK was a resident of the County of Alameda, State of California.  At all relevant times Defendant MACK, as employee of Defendant MERRITT COLLEGE, was acting under color of state law.

5.   The true names and capacities of Defendants named herein as DOES 1-10, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names pursuant to California Code of Civil Procedure, §474.  Plaintiff is informed and believes that DOE Defendants are California residents.  Plaintiff will amend this complaint to show true names and capacities when they have been determined.

6.   In or about 2005, Plaintiff and Defendant MERRITT COLLEGE entered into a written agreement wherein, among other things, Plaintiff was a student.  The agreement further provided for Plaintiff, as a student to have access to the Library, in which a student would be allowed to use computers, provided by Defendant MERRITT COLLEGE within the Library, for educational purposes, including, but not limited to "communicating with Professors."

7.   During the course of attendance at Defendant MERRITT COLLEGE, Plaintiff attended classes, and regular student privileges from Defendant MERRITT COLLEGE, all in recognition to her academic agreement with Defendant MERRITT COLLEGE as a student.

8.   As part of the academic agreement, Plaintiff and Defendant MERRITT COLLEGE were to abide by the terms of the MERRITT COLLEGE Handbook. Among these terms are that Defendant MERRITT COLLEGE will not discriminate against nor harass students.

9.   The MERRITT COLLEGE handbook prescribes the procedure by which a student may submit complaints of harassment and/or discrimination and the procedures which the College will under take in response, which include investigation of said complaints.  Plaintiff has performed all actions and fulfilled all requirements set forth in the Merritt College Catalog required to support a claim against Defendants.

10.   On or about October 5, 2005, Plaintiff suffered from a non-school related family emergency in where she was informed her father, who was hospitalized, was diagnosed terminally ill and had less than one month to live.  Due to this emergency, Plaintiff needed to contact one of her  Professors to communicate the situation to him.  This event became one of many in where Plaintiff needed to communicate with one or more of  her Professors.

11.   On or about September 28, 2005, Plaintiff was emailing one of her Professors in the Library of Defendant MERRITT COLLEGE, regarding a midterm.  As Plaintiff was emailing her Professor, Defendant MACK, who at the time Plaintiff did not have any knowledge of, came up behind Plaintiff and told her to get up and exit.  Defendant MACK approached  Plaintiff, something to the effect of, "your using the computer for personal use."  Plaintiff responded with something to the effect of "I am communicating with my Professor," Plaintiff then showed Defendant MACK the email, however Plaintiff was still forced to leave.  Plaintiff felt uncomfortable and was humiliated in front of other younger students in the Library.  After this incident, Plaintiff complained to the President of Defendant MERRITT COLLEGE, and gave a handwritten complaint to Library personnel to give to the Dean of the Library.  To Plaintiff's knowledge, no action was taken.

12.   On or about October 5, 2005, Plaintiff was once again emailing one of her Professors, informing her that Plaintiff's father was hospitalized and diagnosed terminally ill, and Plaintiff would be missing a class for the first time.  At this time, Defendant MACK approached Plaintiff and told her to get up and exit, while once again accusing Plaintiff of using the computer for personal use.  Plaintiff once again complied with Defendant MACK's demands and accusations and exited the library.  After this incident, Plaintiff complained to a counselor in the

Real Estate Program.  Plaintiff was once again referred to the President's Office and once again no action was taken.

13.  All Plaintiff's Professors informed students that communication outside of class should be through email, due to the fact that classes met once a week.  Any problems or anything students did not understand about the class or assignments or pertinent to class attendance or missed classes was to be communicated through email.

14.  On or about November 2, 2005, at approximately 3:00pm Plaintiff entered the Library and went directly to the computer to print out an assignment for a group project.  Plaintiff was at the computer for less than five (5) minutes when Defendant MACK approached Plaintiff from behind and asked Plaintiff to "get up from the computer and exit the Library," in a harsh tone.  Plaintiff then explained to Defendant MACK why she was using the computer, and showed her the list of Professors who Plaintiff corresponds with, however Defendant MACK did not consider it an educational purpose.  Defendant MACK repeatedly pointed to a sign that said something to the effect of "do not use for personal use," and repeatedly asked Plaintiff if she understood what the sign said.  Out of embarrassment and frustration, Plaintiff left the Library.

15.  On many occasions, Plaintiff observed students using the Library computers for what she understood to be  personal use, however they were not, on any occasion, observed by Plaintiff to be approached by Defendant MACK.   However, Plaintiff was restricted from using the computers for educational purposes.

16.  Plaintiff was unable to follow through with assignments given by a student who was the class leader, because Plaintiff did not have a personal computer or printer, and was unable to use the Library computers, because Defendant MACK would not allow Plaintiff to use them.  The longest Plaintiff had been permitted to stay in the Library to use the computer was less than ten minutes, which is an inadequate amount of time to research, print findings, and respond to her classmates' and/or Professors' emails, including, but not limited to, for group projects, class assignments and/or homework assignments.

17.  On or about November 2005, Plaintiff was enrolled in eight classes, which totaled

24 units.  Plaintiff did not buy books for her classes, because it was too expensive.  Therefore Plaintiff needed the Library and the computers in the Library as her resources.  If Plaintiff was unable to use the computers in the Library, she would have to walk approximately one quarter mile to the Learning Center and then walk back to the Library to use the Reference Books.  However, this was not an economical way to study and complete assignments for Plaintiff, because she would have to go back and forth from the computers in the Learning Center, and the resource books in the Library, using and missing valuable study time.

18.  Plaintiff did not have any excess time for matters other than school and her dying father, as Defendant MACK had on many occasions accused her of.  As a student, Plaintiff's time was precious and every opportunity to study and complete assignments was taken advantage of.

19.  On or about November 6, 2005, a class leader who was in Plaintiff's weekend class, informed Plaintiff that she would be emailing her sixteen pages of information regarding a class project.  Plaintiff responded with something to the effect of, "I will print it out in the Library on Monday," however Plaintiff was too embarrassed to use the computer after the last incident with Defendant MACK, in where Defendant MACK asked Plaintiff to leave in a loud and embarrassing tone, in front of other younger students, because Plaintiff, allegedly was using the computer for personal use.

20.  On or about November 8, 2005, Plaintiff was in the Library studying for two quizzes in her "Legal Aspects" class, when Defendant MACK approached Plaintiff and told her to "be quiet," although Plaintiff was not talking.  As the person across the couch from Plaintiff continued to talk, Defendant MACK once again approached Plaintiff and said "quiet!"  Embarrassed, Plaintiff decided to leave the couch and use the computer to email her Professor regarding a form he was to send her.

21.  Approximately two to five minutes after Plaintiff sat down at the computer, Defendant MACK approached Plaintiff and said something to the effect of, "get up! get up! exit!"  Plaintiff responded with something to the effect of, "enough, enough!"  Plaintiff then got

up from the computer and stated something to the effect of, "I am not leaving, and I will continue what I am doing, because I am not violating any rules. I am reading an email sent to me by my Professor's office secretary." Plaintiff then showed Defendant MACK the email she was reading, however Defendant MACK refused to acknowledge Plaintiff was using the computer for an educational purpose. After this incident Plaintiff gave a written complaint to Ms. Zeikle, a Real Estate Counselor, who then referred Plaintiff to Pamela Price, however no action was taken.

22.    At the time, Plaintiff was a forty-seven year old woman, who was fully aware of the rules of the Library, and with a class load of 24 units did not have excess time to spend using the computer for personal reasons. She was unfairly singled out and harassed by Defendant MACK.

23.    On more than one occasion, Defendant MACK ordered Plaintiff to repeat the phrase "do not use for personal use, and do communicate with professors," in increments of three, humiliating and embarrassing Plaintiff in front of other students and a Librarian Tech.

24.    After several occasions of being embarrassed and singled out, Plaintiff no longer entered the Library if Defendant MACK was there. On the rare occasions Plaintiff entered the Library and Defendant MACK was there, Plaintiff made sure other Librarians or the Dean of the Library were present, because Defendant MACK did not harass or single out Plaintiff when other peers and/or superiors were present.

25.    Eventually, Plaintiff stopped going to the Library as often, due to the harassment endured by Plaintiff from Defendant MACK. Plaintiff started to go to the Learning Center for other services, and would then go to the Main Library to use references books. During this time Defendant MACK did not confront Plaintiff, due to the fact that the Dean of the Library, Mr. Cordova, was in the Library in the evenings and Defendant MACK did not confront Plaintiff if any authority figures were present.

26.    On or about October 9, 2006, Plaintiff and a classmate were studying at a table for a "Anatomy and Physiology" class. Plaintiff and her classmate were whispering to each other and taking notes. Other students in the area were taking loudly while making copies at a nearby copy

machine, and a student was playing games on a computer, while another was chatting on Yahoo Messenger. Defendant MACK approached Plaintiff and told her something to the effect of, "Be quiet! Go upstairs and get a room." Plaintiff felt singled out and embarrassed, because there were many students in the same area of the Library that were speaking loudly and Defendant MACK did not approach them.

27.    On or about October 20, 2006, a Librarian who was being trained by Defendant MACK approached Plaintiff and stated that she was typing too fast and she needed to leave the Library. Plaintiff told the Librarian that she was not going to leave the Library because she was typing too fast on the computer. The Librarian then stated that she had not known that Defendant MACK had been harassing Plaintiff, and apologized.

28.    On multiple occasions Defendant MACK told Plaintiff to go to the Learning Center to use the computers for personal use. This would cause a great inconvenience for Plaintiff, because all the reference books Plaintiff needed for her classes were in the Library, and due to the fact that Plaintiff was not using the computer for personal use. After many occasions of being harassed, wrongly accused, and embarrassed by Defendant MACK, Plaintiff began to study in her car, only to enter the Library to utilize the restroom. Library employees who noticed Plaintiff had stopped using the Library, would approach her when she entered to use the restroom, and would tell Plaintiff when Defendant MACK was not going to be in the Library so Plaintiff could have access to the computers and Reference Books.

29.    After each and every incident in where Defendant MACK harassed, wrongly accused, and embarrassed Plaintiff, Plaintiff complained to Mr. Cordova, Dean of the Library and the President of Defendant MERRITT COLLEGE. At one point in time, Mr. Cordova stated to Plaintiff that the problems between Defendant MACK and Plaintiff were "a girl thing."

30.    After the second incident, Plaintiff was also told by Judy Singer, a Librarian and Noreen, a Library Tech, to complain to Pamela Price, an individual who does payroll, who would then pass the information up the chain of command. Plaintiff complained to Pamela Price after

1   every incident in where Defendant MACK harassed, wrongly accused, and embarrassed Plaintiff,

2   Ms. Price then passed the information on.

3       31.   On many occasions during the relevant period, Plaintiff complained to her professors

4   about the harassment by Defendant MACK.  Plaintiff's professors wrote emails memorializing

5   these complaints and supporting Plaintiff's entitlement to use the Library computers Among

6   other things.  These e-mails brought the issues to the attention of the Dean of Real Estate, Mr.

7   Lee.

8       32.   In or about the beginning of May 2005, Plaintiff then complained to Karen Ulrich,

9   Director of Employee Relations, who briefly talked to Plaintiff, and rescheduled another meeting.

10  Karen Ulrich later cancelled that appointment and did not reschedule.

11      33.   Plaintiff received a letter from  Ms. Ulrich dated January 22, 2007, that an

12  investigation would be conducted by Mark Paschal, a Peralta Community College District EEO

13  investigation consultant.  However no further action was taken, and the harassment and false

14  accusations toward Plaintiff, by Defendant MACK continued**.**

15      34.   Plaintiff also filed a written complaint with Defendant MERRITT COLLEGE in

16  compliance with the appropriate procedures and several written complaints with different

17  departments and Librarians. *(Declaration of Elizabeth Santos Attached as **Exhibit A** and*

18  *incorporated herein by reference).*

19      35.   Defendants responded to these complaints with a few telephone calls to Plaintiff,

20  scheduling meetings which were all later cancelled, and by letters-including the above referenced

21  letter from Ms. Ulrich dated January 22, 2007 and another letter dated April 24, 2007.

22      36.   When no appropriate response was forthcoming from Defendants, and the

23  procedures set forth in the Merritt College Catalog which constituted terms of Plaintiff's

24  agreement with Defendants, Plaintiff filed this lawsuit to preserve her rights.

25      37.   Plaintiff is of Filipino-American descent, Defendant MACK is of African-American

26  descent.

27

28  SECOND AMENDED COMPLAINT FOR PRELIMINARY AND          8
    PERMANENT INJUNCTION AND  DAMAGES

38.   Plaintiff, while emailing her Professors on the computers in Defendant MERRITT COLLEGE Library, which are available to all students, was continuously subjected to racial discrimination and harassment from Defendant SHIRLEY MACK as well as unwelcome remarks and inappropriate tone toward Plaintiff.

39.   Plaintiff has met all requirements for presentation of tort claims against Defendant MERRITT COLLEGE except for those which Defendants prevented her from performing.

40.   The discrimination, harassment, unwelcome remarks, and inappropriate tone were objectively offensive to reasonable students in Plaintiff's circumstances and Plaintiff herself found the conduct offensive.

41.   All Defendants were aware of the discriminatory and hostile environment to which Plaintiff was subjected, as well as the fact that she found it offensive and unwelcome, because she complained of the discrimination and harassment.  Additionally, the perpetrator of the discrimination and harassment was a librarian at Defendant MERRITT COLLEGE and therefore her knowledge of her own discriminatory, unlawful, inappropriate, offensive and unwelcome conduct is imputed to his employers.  Moreover, the discriminatory environment was well known to students and employees.

42.   Defendant MERRITT COLLEGE knew of the ongoing harassment, yet failed to do whatever was necessary to end the harassment, make Plaintiff whole by restoring lost student benefits or opportunities, and prevent the misconduct from reoccurring.  Instead, Defendants took no action.  Defendant MERRITT COLLEGE failed to take appropriate disciplinary action against the harasser and did not intended to stop the harassment.  Defendant MERRITT COLLEGE failed to advise the Plaintiff of the discipline imposed on the harasser and failed to insure that no further harassment or retaliation against the Plaintiff would occur.

## FIRST CAUSE OF ACTION:
## IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
### [Against All Defendants]

43.   The allegations of paragraphs 1 through 42 are realleged and incorporated herein by

SECOND AMENDED COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTION AND  DAMAGES

9

reference. This Cause of Action is pleaded against all Defendants.

44.   This Cause of Action is to recover damages against Defendants for violation of 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964), and to obtain a preliminary and permanent injunction to prevent Defendants from further violating that statue.

45.   Defendant MERRITT COLLEGE operates programs within the meaning of 42 U.S.C. §6107.

46.   Plaintiff was excluded from, and was denied the benefits of Federally assisted programs on the basis of her race and age.  Defendants acted knowingly, willfully, maliciously, and with reckless and callous disregard for Plaintiff's Federally protected rights.

47.   As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and impeding irreparable harm.

48.   Plaintiff has no adequate or speedy remedy at law for the conduct of Defendants described above, because she will be denied to ability to complete her education or receive the benefits of that education.  This action for injunctive relief is Plaintiff's only means of securing prospective relief.

WHEREFORE, Plaintiff prays judgement against Defendants, and each of them as follows:

1.   For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, Attorneys, and all those in active concert or participation with defendants, to refrain immediately and pending the final hearing and resolution of this action from discriminatory activities.

2.   For a permanent injunction permanently enjoining and restraining defendants, and their agents, employees, successors, Attorneys and all those in active concert or participation with Defendants,  from discriminatory activities..

3.   For compensatory damages, in an amount to be determined according to proof at trial;

4.   For punitive damages, in an amount to be determined according to proof at trial;

5.  For reasonable Attorney's fees, pursuant to 42 U.S.C. §1988;

6.  For costs of suit incurred in this action; and

7.  For such other and further relief as the Court deems proper.

**SECOND CAUSE OF ACTION:**
**AGE DISCRIMINATION**
**IN VIOLATION OF THE AGE DISCRIMINATION ACT**
**(42 U.S.C. §§ 6102 and 6104)**
**[Against all Defendants]**

49.  The allegations of paragraphs 1 through 42 and 44 through 48 are realleged and incorporated herein by reference. This Cause of Action is pleaded against all Defendants.

50.  This cause of action seeks to obtain preliminary and permanent injunctive relief to prevent defendants from violating 42 U.S.C. § 6102 (The Age Discrimination Act of 1975).

51.  This action arises under 42 U.S.C. §§ 6102 and 6104 (The Age Discrimination Act of 1975). The jurisdiction of this Court is predicted on 28 U.S.C. §§ 1331 and 1343.

52.  Plaintiff is informed and believes and thereon alleges that, at all times mentioned in this complaint, each defendant was the agent of the others, was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them was committed on behalf of every other defendant.

53.  Defendant MERRITT COLLEGE receives federal financial assistance.

54.  Plaintiff was subjected to the harassment, exclusion, and discrimination described above in her activities under programs receiving Federal assistance.

55.  Plaintiff who was born on July 26, 1958, was older than most students at Defendant MERRITT COLLEGE, was excluded from educational programs receiving Federal assistance because of her age.

56.  On may occasions, Plaintiff demanded that Defendants stop the unlawful, discriminatory conduct but Defendants refused, and continued to refuse to refrain from said

conduct.

57.   As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable harm, in that she will be unable to complete her education and to gain the full benefits of the education for which she has contracted..

58.   Plaintiff has no adequate or speedy remedy at law for the conduct of Defendants described above.  This action for injunctive relief is plaintiff's only means of securing prospective relief.

WHEREFORE, plaintiff prays judgement against defendants, and each of them, as follows:

1.   For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, Attorneys, and all those in active concert or participation with Defendants, to refrain immediately and pending the final hearing and resolution of this action from discrimination and harassment of Plaintiff.

2.   For a permanent injunction permanently enjoining and restraining defendants, and their agents, employees, successors, and attorneys and all those in active concert or participation with defendants,  from preventing Plaintiff from using educational facilities.

3.   For reasonable Attorney's fees under 42 U.S.C. § 6104(e)(1);

4.   For costs of suit incurred in this action; and

5.   For such other and further relief as the Court deems proper.

## THIRD CAUSE OF ACTION:
## IN VIOLATION OF CALIFORNIA GOVERNMENT CODE §11135
### [Against All Defendants]

59.   The allegations of paragraphs 1 through 42, 44 through 48 and 50 through 58 are realleged and incorporated herein by reference. This Cause of Action is pleaded against all Defendants.

60.   Plaintiff's age and race were the basis for the denial of benefits and discriminations set forth above.

61.   Defendant MERRITT COLLEGE is a State agency funded by the State of California

62.   Defendants' threatened unlawful and discriminatory conduct, described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Plaintiff.

63.   Plaintiff has no adequate remedy at law for the continuous harm being done to her.

WHEREFORE, Plaintiff prays judgement against defendants, and each of them, as follows:

1.   For damages to be determined in an amount according to proof

2.   For reasonable Attorney's fees

3.   For costs of suit incurred in this action; and

4.   For such other and further relief as the Court deems proper.

**FOURTH CAUSE OF ACTION:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**[Against All Defendants]**

64.   The allegations of paragraphs 1 through 42, 44 through 48, 50 through 58, and 60 through 63 are realleged and incorporated herein by reference. This Cause of Action is pleaded against all Defendants.

65.   Defendants' conduct, as throughly alleged above, was and is extreme and outrageous conduct amounting to intentional infliction of emotional distress, which was intended to and/or was done in conscious disregard of the probability of causing Plaintiff to suffer severe emotional distress.

66.   Defendants' outrageous conduct includes harassment, inducement of stress, and thus intentional infliction of emotional distress

67.   By the actions described herein, Defendants intentionally and with conscious disregard, attempted to strip Plaintiff of her dignity and reputation among her peers and throughout the institution.

68.   As a proximate result of Defendants' aforementioned wrongful conduct, Plaintiff has suffered and continues to suffer grave emotional distress, including embarrassment, humiliation,

1  and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof

2  at the time of trial.

3      69.  Defendants' conduct was willful, wanton, malicious, and with reckless disregard for

4  the rights of Plaintiff, so as to justify an award of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION:
### BREACH OF CONTRACT
### [Against All Defendants]

70.  The allegations of paragraphs 1 through 42, 44 through 48, 50 through 58, 60 through

63 and 65 through 69 are realleged and incorporated herein by reference. This Cause of Action is

pleaded against all Defendants.

71.  Plaintiff entered into a written relationship with Defendant MERRITT COLLEGE in

or about 2005 as heretofore alleged pursuant to which she agreed to study, for which Defendant

MERRITT COLLEGE agreed to furnish Plaintiff the necessary academic environment to

facilitate Plaintiff's education.  During the entire course of Plaintiff's academic pursuit with

Defendants, there existed a contract between Plaintiff and Defendant MERRITT COLLEGE,

which at the time of Plaintiff's injuries included, but was not limited to, the following terms and

conditions:

(a)  Plaintiff would be able to continue her academic relationship with Defendants

indefinitely so long as she carried out her academic duties in a proper and competent manner;

(b)  Plaintiff would not be harassed or impeded in her pursuit of studying and the use of

facilities would not be barred unless for  good cause;

©  Defendants would not evaluate Plaintiff's student activities and bar her from utilizing

facilities;

(d)  Defendants would provide Plaintiff with support so that she could properly carry out

her academic responsibilities.

72.   This agreement was evidenced by having a student identification card, paying the

necessary fees for registration of classes, and other documents that evidenced an academic relationship; oral representations to Plaintiff by Defendants' agents and employees, and the parties' entire course of conduct, including the following:

(a)   Defendant MERRITT COLLEGE's written and oral personnel policies and discipline procedures;

(b)   Defendant MERRITT COLLEGE's established policy which was known to Plaintiff, and relied upon her, that a student such as Plaintiff, who had performed her student functions as a good and faithful student, would have a secure academic environment tenure with Defendant; that a student such as Plaintiff would be permitted to continue her academic pursuit unimpaired by harassment and mental distress unless failing to meet the standards of Defendant MERRITT COLLEGE for good and sufficient cause; and that a student such as Plaintiff would not be disciplined or impeded in her academic pursuit without good and sufficient cause;

©   Again and again during her academic relationship Plaintiff was told by her Professors, orally and in writing, that she was doing a satisfactory or better job. As a result of the above representation, Plaintiff responsibly came to expect to rely on the promise of an academic environment free of harassment and mental distress.  Such statements and acts communicated to Plaintiff the idea that she had performed her student responsibilities and that her academic relationship with Defendant MERRITT COLLEGE was secure.  Plaintiff in good faith relied upon these representations and believed them to be true;

(d)   Plaintiff's reliance on, belief in, and acceptance in good faith of all the assurances, promises and representations as listed in the previous paragraphs lead Plaintiff throughout her academic relationship with Defendants to reasonably believe that her academic relationship was secure and that thereby existed a contract of a continuous academic environment with Defendants free of harassment and mental distress, with Defendants.  As independent consideration for this contract of a continuing academic relationship, and as evidence of Plaintiff's reliance thereon, Plaintiff refrained from seeking any other academic environments.

73.   Plaintiff fully performed all her obligations under the agreement except for those

1  from which she was prevented from performing by Defendants.

2  74.  Plaintiff undertook and continued her academic relationship with the expectation to

3  be free from harassment, discrimination based on race and age, and free from being singled out

4  as a mature woman in an environment of primarily students under twenty-five years old and duly

5  performed all of the conditions of the contract to be performed by her.  Plaintiff in the past has

6  been ready, willing and able to perform, and has offered to perform, all of the conditions of the

7  contract to be performed by her, however in the last two years, due to stress created by

8  Defendants in Plaintiff's academic pursuit, she was unable to complete courses that she would

9  have normally succeeded in.

10  75.  Despite the representation made to Plaintiff by Defendants and the reliance she

11  placed upon them, Defendant MERRITT COLLEGE failed to carry out its responsibilities under

12  the terms of the academic agreement by subjecting Plaintiff to arbitrary, unfair, and dishonest

13  criticism.

14  76.  As a proximate result of Defendant MERRITT COLLEGE's breach of the academic

15  agreement, Plaintiff has suffered and continues to suffer substantial losses in academic

16  opportunities, and other academic benefit which she would have received had Defendants not

17  breached said agreement, all to her damage in an amount according to proof.  Furthermore,

18  Plaintiff registered for classes for the 2007 school year, but was unable to follow through with

19  attending the classes, due to emotional and mental distress caused by Defendants.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SIXTH CAUSE OF ACTION:
### UNLAWFUL DISCRIMINATION BASED UPON RACE
### IN VIOLATION OF 42 U.S.C.§1981.19
### [Against All Defendants]

77.  The allegations of paragraphs 1 through 42, 44 through 48, 50 through 58, 60

through 69 and 71 through 76 are realleged and incorporated herein by reference. This Cause of

Action is pleaded against all Defendants.

78.  Defendant MERRITT COLLEGE, failed to supervise Defendant MACK in the

Library where she performed her duties, and failed to properly investigate the actions of Defendant MACK. Defendant MACK, continued harassment and mental anguish and provided an environment of stress for Plaintiff.

79. Plaintiff is informed and believes that in addition to the practices enumerated in this cause of action, Defendant MERRITT COLLEGE has engaged in other discriminatory practices which are not fully known by Plaintiff.

80. As a direct, foreseeable, and proximate result of Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer substantial loses in education and educational benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to her damage in an amount in excess of the minimum jurisdiction of this court, the precise amount of which will be proven at trial.

81. Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Because the acts taken towards Plaintiff were carried out by managerial employees acting in a despicable, cold, callous, and intentional manner in order to injure and damage Plaintiff, she is entitled to recover punitive damages from Defendants in an amount according to proof.

82. As a result of Defendants' discriminatory acts as alleged herein, Plaintiff has no plain, adequate or complete remedy at law and Defendants continue to engage in said alleged wrongful practices. Therefore, Plaintiff requests:

(a) That she be made whole and afforded all benefits attendant thereto that would have been afforded Plaintiff but for said discriminatory; and

(b) That Defendants, their agents, successors, employees and those acting in concert with them be enjoined permanently from engaging in each of the unlawful practices, policies, usages and customs set forth herein.

WHEREFORE, Plaintiff prays for judgement as hereinafter set forth.

**SEVENTH CAUSE OF ACTION:**
**NEGLIGENT MISREPRESENTATION**
**[Against All Defendants]**

83.   The allegations of paragraphs 1 through 42, 44 though 48, 50 through 58, 60 through 69, 71 though 76 and 78 though 82 are realleged and incorporated herein by reference. This Cause of Action is pleaded against all Defendants.

84.   During the course of Plaintiff's academic relationship with Defendant MERRITT COLLEGE, and each of them, misrepresented to Plaintiff that she would have an academic environment free of stress, harassment and mental anguish.

85.   Defendants, and each of them, when they made their representations of fact to the Plaintiff, which are described in the preceding paragraph, had no reasonable grounds for believing the representations were true, and Defendants, and each of them, made their representations with the intent to induce Plaintiff to take the actions herein alleged.  Defendants' representations were made with the intent that Plaintiff rely upon them, and Plaintiff did reasonably rely upon them to her detriment.

86.   In making such representations of fact, and in suppressing and failing to disclose facts material to Plaintiff's employment relationship as described in Paragraphs 56 and 57 above, Defendants negligently misled the Plaintiff about her prospects for educational stability. Defendants, and each of them, knew or reasonably should have known that Plaintiff would rely upon the Defendants' representations and Defendants' failure to disclose facts material to her academic relationship.  Plaintiff did rely on the Defendants' misrepresentations and failure to disclose material facts to her detriment.

87.   As a direct, foreseeable, and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered and continues to suffer substantial losses in earnings and other academic benefits, and Plaintiff has suffered and continues to suffer pain, discomfort, and anxiety, humiliation and emotional distress, and will continue to suffer said emotional distress in the future in an amount according to proof.

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of

1  them, as follows:

2      (1)  For compensatory damages including lost student benefits, mental and emotional

3  distress, and other special and general damages according to proof;

4      (2)  For an award of punitive damages on Shirley Mack and DOES 1-10, where allowed

5  by law;

6      (3)  For an award of interest, including prejudgement interest, at the legal rate, where

7  allowed by law;

8      (4)  For an award to Plaintiff of costs of suit incurred herein on all causes of action;

9      (5)  For an award to Plaintiff of Attorneys' fees pursuant to Government Code §12900, et

10 seq and 42 U.S.C.§1981.19, where allowed by law.

11     (6)  For a permanent injunction enjoining Defendants, their agents, successors and

12 employees and those acting in concert with them for engaging in each of the unlawful practices,

13 policies, usages and customs set forth in the First and Fourth Causes of Actions, where allowed

14 by law.

15     (7)  For an award to Plaintiff of such other and further relief as this court deems just and

16 proper.

17

18

19 **DATED:** February 11, 2008          **LAW OFFICES OF BOMARK-NOEL**

20 _____          */s/ Kjell C. Bomark-Noel*
                                     **KJELL C. BOMARK-NOEL, ESQ.**
21                                     Attorney for Plaintiff:
                                      ELIZABETH SANTOS
22

23

24 **DATED:** February 11, 2008          **LAW OFFICE OF RICHARD C. HARPER**

25 _____          */s/ Richard Harper*
                                     **RICHARD C. HARPER, ESQ.**
26                                     Attorney for Plaintiff:
                                      ELIZABETH SANTOS
27

28 SECOND AMENDED COMPLAINT FOR PRELIMINARY AND          19
   PERMANENT INJUNCTION AND DAMAGES

1

## VERIFICATION

2

I, ELIZABETH SANTOS am a Plaintiff in the above-entitled action.  I have read the

3

foregoing Second Amended Complaint and know the contents thereof.  Under penalty of
perjury, under the laws of California I affirm the above to be true and correct, to the best
of my belief and recollection.

4

Executed in San Leandro, County of Alameda, State of California.

5

6

DATED: February 11, 2008                    _/s/ Elizabeth Santos__
                                            ELIZABETH SANTOS
7                                           Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTION AND DAMAGES                    20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

SECOND AMENDED COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTION AND  DAMAGES

21

1  **Kjell C. Bomark–Noel, Esq. (SBN 147494)**
   LAW OFFICES OF BOMARK-NOEL
2  1124 East 14th Street, Suite B
   San Leandro, California 94577
3  Telephone: (510) 352-1030

4  **Richard C. Harper, Esq. (SBN 99758)**
   LAW OFFICE OF RICHARD C. HARPER
5  7 C Street
   Tracy, California 95376
6  Telephone: (209) 834-2399

7
   **ATTORNEYS FOR PLAINTIFF:**
8  **ELIZABETH SANTOS**

9

10                    **UNITED STATES DISTRICT COURT**

11                  **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14  ELIZABETH SANTOS                      Case No: C075227EMC

15              Plaintiff,                **DECLARATION OF PLAINTIFF**
        v.                                **ELIZABETH SANTOS**
16
   MERRITT COLLEGE;
17  SHIRLEY MACK, an individual;
   and DOES 1-10, inclusive,
18
              Defendant,
19  _____/

20

21

22

23

24

25

26

27

28

I, ELIZABETH SANTOS, declare:

1.    I am the Plaintiff in this matter.

2.    Between September 2005 through the time when this action was filed I repeatedly attempted to resolve the problems with Shirley Mack not allowing me to utilizing the Library through the Merritt College administration and Peralta Community College District in an amicable way.

3.    On several occasions I was informed to follow the Harassment and Discrimination Complain Procedures, as outlined in the Merritt College Catalog 2005-2007, which are as follows:

1.)  Complaints of unlawful discrimination may be filed by a student who has personally suffered discrimination or by a person who has knowledge of such discrimination, within one year of the date of the alleged unlawful discrimination or within one year of the date on which the complainant knew or should have known of the facts underlying the allegation of unlawful discrimination or harassment.

2.) Student discrimination or harassment complaints may be
filed with the District's Equal Opportunity Officer (at 333 East Eighth Street, Oakland, CA 94606; (510) 466-7252).

3.) Student discrimination and harassment complaints may
also be filed with the Vice President of Student Services as follows: Merritt College, Building P, Room 311, (510) 436-2478

4.) All complaints not filed directly with the District's Equal
Opportunity Officer should be immediately forwarded to that Officer on the approved District form.

5.) Whenever any person brings charges of unlawful discrimination to the District Equal Opportunity Officer's attention, that Officer shall:   (a) Inform the complainant that he or she may, but is not required to, informally resolve the charges and that s/he has the right to end the informal resolution effort and begin the formal stage at any time;   (b) Notify the complainant of

the procedures for filing a complaint;  © Discuss with the complainant what actions he or she is seeking in response to the alleged discrimination; and  (d) Advise the complainant that he or she may file a complaint with the Office for Civil Rights of the United States Department of Education.  (e) Immediately upon receipt of a complaint, the District's Equal Opportunity Officer will forward a copy to the State Chancellor's Office on the appropriate form.  (f) The District's Equal Opportunity Officer will return defective complaints to the complainant with an explanation of the deficiencies and how they may be corrected if the complaint is to be considered.  (g) Upon receipt of the complaint, the District Equal Opportunity Officer will review the complaint and determine the need for any interim measures of relief pending completion of the investigation.

6.) Within fourteen (14) days of receiving the complaint, a thorough and impartial investigation will commence with notification to the complainant and the Chancellor of the initiation of the investigation. Complaints will be investigated and resolved in accordance with the District's unlawful discrimination complaint procedures. To ensure a prompt and equitable investigation of complaints, the investigation shall include an opportunity for the complainant and the accused to present witnesses and other evidence on their behalf. Thus, the investigation shall include private interviews with the complainant, the accused individual and each of the witnesses identified by both parties. Sufficient information about the allegations of the complaint shall be disclosed to the accused to provide him/her with an opportunity to respond to the allegations of the complaint and provide additional information.  To the extent appropriate, the District will keep the complainant apprised of the progress of the investigation.

7.) Complaints will be handled promptly in an appropriately confidential manner that is, the District's Equal Opportunity Officer will disclose the identities of the parties only to the extent necessary to carry out an investigation.

8.)  The results of the investigation shall be set forth in a written report which shall include at least all of the following:  (a) Description of the circumstances giving rise to the complaint;  (b) A summary of the testimony provided by each witness, including the complainant and any

witnesses identified by the complainant;   (c) An analysis of any relevant data or other evidence collected during the course of the investigation; and   (d) A specific finding as to whether discrimination did or did not occur with respect to each allegation in the complaint.   9.) Within ninety (90) days of receiving a complaint, the District shall complete its investigation and provide the complainant with the following information:   (a) A written notice setting forth:   (1) A copy or summary of the District's investigative report;   (2) The District's determination on the merits of the complaint; the proposed resolution of the complaints, to the extent that disclosure does not invade any person's privacy rights; and  (3) The complainant's right to appeal to the District governing board and the Chancellor. Likewise, the accused individual shall be notified of the outcome of the investigation.

10.) If the allegation of sexual, racial, or disability harassment is substantiated, the District will take reasonable, timely and effective steps to end the harassment. Depending upon the severity of a given case and/or prior incidents of harassment, a violation of this rule shall lead to disciplinary action including the possibility of expulsion or termination from the District. Remedial measures will be offered if appropriate to correct the discriminatory effects on any individual who has experienced harassment. The District's policy against discriminatory harassment will be interpreted consistently with any federally guaranteed rights involved in a complaint proceeding, including student's First Amendment rights to free speech and the accused individual's right to due process.

11.) Should the Complainant not be satisfied, he or she may appeal the proposed resolution within ten (10) days of the date of the proposed resolution to the Chancellor.  The Chancellor may request an additional investigation, sustain the administrative determination, reverse the administrative determination or take any other appropriate action. If the Chancellor makes the administrative determination, the Complainant may appeal directly to the Board of Trustees within the same time periods set forth above. If the Chancellor sustains the administrative determination or the Complainant is not otherwise satisfied with the Chancellor's decision, the Complainant may appeal to the Board of Trustees within fifteen (15) days of the Chancellor's decision. All appeals

shall be filed with the Chancellor's Office at 333 East 8th Street, Oakland, CA 94606. Should the complainant not be satisfied, he or she may appeal the proposed resolution to the District governing board within fifteen (15) days. The District board shall review the original complaint, the investigative report, the determination and the appeal and may issue a final District decision within forty-five (45) days of receiving the appeal. The decision of the Administration will become final if the Board does not act within forty-five (45) days. The student may then appeal the final District decision to the State Chancellor's Office within thirty (30) days. The Office of Equal Opportunity will furnish the complainant with necessary information regarding where and how to file the objection with the State Chancellor's Office.

12.) Within 150 days of receiving the complaint, and after the resolution proposal is sent to the complainant, the District will forward the complete file of the complaint, findings of the investigation, the District's proposed resolution, the letter to the complainant informing him or her of the proposal, and any relevant material to the State Chancellor's Office.

4.      I completed all of the complaint procedures outlined above, and at no time was my complaint ever returned to me for being incomplete or defective.  However, I was not informed within fourteen (14) days that an investigation would commence and I would be notified when that investigation had begun.

5.      I followed that procedure to as outlined in the Merritt College Catalog 2005-2007, I submitted my grievances and problems with the Office of Student Services and the Vice President's office, located in Building P Room 311, as I was told.

6.      When I was not satisfied with the results of the so-called investigation through Merritt College's Office of Student Services, I dealt directly with the Office of the Peralta Community College District located at 333 East 8th Street, Oakland, CA 94606, with a telephone number of (510) 444-7200.  After a complete investigation was done and completed, my file was to be returned to my possession, however it was not.  I did receive a letter summarizing an investigation which allegedly occurred.

7.      At one point in time, Peralta Community College District informed me that my

file had been lost and they could not locate it.

8.      On many occasions between September 2005 through early 2007, I received letters that stated an investigation was completed.

9.      In or about the beginning of May 2006, I complained to Karen Ulrich, Director of Employee Relations, who briefly talked to me, and rescheduled another meeting.  Karen Ulrich later cancelled that meeting.  The meeting was never rescheduled despite my efforts to reschedule.  Ms. Ulrich wrote in a letter dated January 22, 2007 that an investigation would be conducted by Mark Paschal, a Peralta Community College District EEO investigation consultant. However, no further action was ever taken, and the harassment and false accusations toward me, by Shirley Mack continued.

10.     After no action was taken, I felt singled out and was forced to stop utilizing the Library, due to the harassment I was forced to endure.  I began studying in my car, only entering the Library if I absolutely needed to and when Ms Mack was not present.

11.     Since Peralta Community College District claimed they had closed the file, I then went to the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission.  On or about January 22, 2007 I received a Right to Sue Letter and proceeded therefore with my lawsuit.

**Under penalty of perjury under the laws of the State of California I affirm the above to be true and correct, to the best of my belief and recollection.**

**Executed in San Leandro, County of Alameda, State of California.**

**DATED:** February 11, 2008                         */s/ Elizabeth Santos*
                                                    **ELIZABETH SANTOS**
                                                    Plaintiff