UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SANTOS, | No. C-07-5227 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS'  MOTION FOR SUMMARY JUDGMENT** |
| PERALTA COMMUNITY COLLEGE DISTRICT, *et al.*, | **(Docket No. 84)** |
| Defendants. | |
| _____/ | |

      Plaintiff Elizabeth Santos has filed suit against Defendants Peralta Community College District ("Peralta" or "District") and Shirley Mack for race discrimination. Currently pending before the Court is Defendants' motion for summary judgment. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and the supplemental briefing requested by the Court, the Court hereby **GRANTS** Defendants' motion.

///
///
///
///
///
///
///
///

## I.    **FACTUAL & PROCEDURAL BACKGROUND**[1]

The evidence, either not in dispute or viewed in Ms. Santos's favor, reflects as follows.

Ms. Santos is Filipino. *See* Santos Depo. at 65. At all relevant times, she was a student of Peralta, enrolled at either Merritt College or Laney College. *See* Santos Decl. ¶ 2. Ms. Mack is a tenured employee of the District. At all relevant times, Ms. Mack worked as a librarian at Merritt College or Laney College. *See* Mack Decl. ¶ 1.

As a student of Peralta, Ms. Santos was entitled to have access to the college libraries and their computers. *See* Santos Decl. ¶ 2. Ms. Santos complied with the school policy that the computers be used for educational purposes only. *See* Santos Decl. ¶ 10. Although Ms. Santos complied with this policy, she was repeatedly mistreated by Ms. Mack who accused Ms. Santos on multiple occasions from 2005 to 2008 of using the Merritt College library computers for personal reasons. *See, e.g.*, Santos Decl. ¶¶ 6, 7, 9, 14. On these occasions, Ms. Mack either forced Ms.

---

[1] The Court notes that Defendants have filed eleven objections to the evidence submitted by Ms. Santos in opposition to the motion for summary judgment.

The Court sustains Defendants' objection to Exhibit A of the Bomark-Noel declaration (purportedly excerpts from the Santos deposition). As Defendants argue, Ms. Santos never attached a copy of Exhibit A to the declaration.

However, the Court overrules Defendants' objection that the Court should not consider any deposition testimony for which Ms. Santos has failed to provide a court reporter's certification. Defendants correctly note that, in *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002), the Ninth Circuit held that

> [i]t is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." Such an affidavit lacks foundation even if the affiant counsel were present at the deposition.

*Id.* at 774. But Defendants' challenge to the deposition testimony elevates form over substance. Defendants do not actually claim that the deposition testimony is inauthentic -- *e.g.*, fabricated or otherwise incorrect. Because the Court could give Ms. Santos an opportunity to cure the defect by providing the certifications, and Ms. Santos has now provided the certifications, *see* Docket No. 102, the Court shall consider the deposition testimony as submitted. This will result in no prejudice to Defendants as this Court ultimately concludes that, even taking into consideration such evidence, Defendants are entitled to summary judgment.

As for Defendants' remaining objections, the Court finds that they are moot. The evidence being challenged is not relevant for purposes of resolving the motion for summary judgment -- *i.e.*, the evidence does not in any way suggest discrimination on the basis of race.

Santos to leave or Ms. Santos felt compelled to leave the library. *See, e.g.*, Santos Decl. ¶ 6, 7, 9. Eventually, Ms. Santos would go the library only if (1) Ms. Mack was not there or (2) Ms. Mack was there but either a Dean of the Library or another librarian was also present. *See* Santos Decl. ¶ 19. If either of these situations were not possible, Ms. Santos studied in her car and entered the library only to use the restroom. *See* Santos Decl. ¶ 23. Ultimately, Ms. Santos decided to transfer from Merritt College to Laney College because of the problems with Ms. Mack. *See* Santos Depo. at 91.

During the relevant time period, Ms. Santos made complaints about Ms. Mack's conduct to various employees of Peralta, including her professors, library employees, and the Dean of the Library. In May 2006, she also complained to the District's Director of Employee Relations, Karen Ulrich. *See* Santos Decl. ¶¶ 24-27. For reasons that are not clear based on the record, a meeting between Ms. Santos and Ms. Ulrich never took place and later that month Ms. Santos filled out an "Unlawful Discrimination Complaint Form" and submitted it to the District. *See* Santos Decl. ¶ 28, Ex. C. In the complaint, Ms. Santos claimed that Ms. Mack was bullying and harassing her, but she made no mention of race as the underlying basis of Ms. Mack's conduct. Ms. Santos attempted to follow up on the matter with Ms. Ulrich in December 2006, but was unsuccessful. *See* Santos Decl. ¶ 27. As a result, Ms. Santos resubmitted her "Unlawful Discrimination Complaint Form" on January 11, 2007, *see* Santos Decl. ¶¶ 27-8 ; however, as with the original complaint, no mention was made of race discrimination. *See* Santos Decl. ¶ 28, Ex. C.

Thereafter, on January 13, 2007, Ms. Santos filed a written complaint with the California Department of Fair Employment and Housing ("DFEH"). *See* Santos Decl. ¶ 39, Ex. H. Ms. Santos claims that this action was necessary because Peralta told her that it had closed her file.[2] *See* Santos Decl. ¶ 39. Here, Ms. Santos did make an allegation of discrimination by Ms. Mack on the basis of race. On January 22, 2007, the DFEH responded to Ms. Santos's complaint, stating that her case had closed on January 17 and that she had been granted her request for an immediate right-to-sue.

---

[2] This assertion is questionable. Ms. Santos's own evidence indicates that she received a letter in late January from the District, stating that it was conducting an investigation into her complaints about Ms. Mack.

*See* Santos Decl. ¶ 39 & Ex. I. It is unclear based on the record whether the District received either notice of Ms. Santos's complaint or the DFEH's response to Ms. Santos. Ms. Santos does not argue in any of her papers that the District should have known of race discrimination based on the DFEH complaint.

Also on January 22, 2007, Ms. Ulrich (acting on behalf of Peralta) sent a letter to Ms. Santos, informing her that the District was conducting an investigation into Ms. Mack's behavior. *See* Santos Decl. ¶ 37, Ex. G. The investigator telephoned Ms. Santos to interview her, but Ms. Santos told the investigator that he should be interviewing Ms. Mack and not her. *See* Santos Depo. at 137-38. In April 2007, Ms. Santos received a letter from Peralta's investigator, which stated that the investigation had been completed and that, although Ms. Mack acted aggressively in enforcing the library rules to a greater extent than her colleagues, there was no finding that Ms. Mack had bullied Ms. Santos. *See* Santos Decl., Ex. F.

More than a year later, in late December 2008 or early 2009, Ms. Ulrich transferred Ms. Mack from the library at Merritt College to the library at Laney College. *See* Ulrich Decl. ¶ 3. Before Ms. Mack was transferred, Ms. Santos had already transferred as a student to Laney College because of the problems she had experienced with Ms. Mack. *See* Santos Depo. at 91. According to Ms. Santos, Peralta transferred Ms. Mack to Laney College with the knowledge that Ms. Santos was a student there. However, she provides no evidence to support this claim. Instead, in her opposition, Ms. Santos simply argues that, if Peralta was able to locate a student from Merritt College to provide deposition testimony in support of its case, then it should have been able to find out which school Ms. Santos attended. *See* Opp'n at 9. According to Peralta, it had to transfer Ms. Mack to Laney College because (1) she had a medical condition and, under state and federal disability laws, it was required to provide a reasonable accommodation for her disability and (2) Laney College was the only school in the District that had an open position for a tenured librarian. *See* Ulrich Decl. ¶¶ 3-4.

Following the transfer of Ms. Mack to Laney College, Ms. Santos claims that there were continued problems between herself and Ms. Mack. *See, e.g.*, Santos Depo. at 96, 99-102, 115.

4

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, of any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" for summary judgment purposes only when there is a sufficient evidentiary basis upon which a reasonable fact finder could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the movant's favor. *See id.* at 255.

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, discovery, and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Summary judgment is proper if a defendant can show that there is no evidence supporting an element essential to a plaintiff's claim. *See id*. at 317.

B. Section 1981 Claim for Race Discrimination

The only claim that Ms. Santos asserts against Ms. Mack is a claim for race discrimination in violation of 42 U.S.C. § 1981. *See* 42 U.S.C. § 1981(a) (providing that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens"). To prevail on a claim under § 1981, the plaintiff must prove intentional discrimination. *See Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999). It is Ms. Santos's burden to prove such discrimination. *See Fobbs v. Holy Cross Health Sys. Corp*., 29 F.3d 1439, 1447 (9th Cir. 1994).

In the instant case, there is no real dispute that Ms. Santos was treated poorly by Ms. Mack. The question is whether there is a genuine dispute of material fact that this mistreatment was racially discriminatory -- *i.e.*, was she discriminated against based on a racial animus? In their motion, Defendants argue first that any mistreatment could not have been based upon such an animus because Ms. Mack did not even know at the time that Ms. Santos is Asian. *See* Mack Decl. ¶ 3. Ms. Mack's declaration, however, is not dispositive because her credibility is at issue, and it is not the job of this Court to grant or deny summary judgment by making credibility determinations. *See Anderson*, 477 U.S. at 249 (noting that, "[a]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial"); *see also Robinson v. Adams*, 847 F.2d 1315, 1317 (9th Cir. 1987) (noting that the credibility of an alleged discriminator can be a triable issue of fact).[3] Moreover, lack of knowledge of one's precise ethnicity or race would not necessarily preclude a finding of racial discrimination. Discrimination may be based on one's perceived race. *Cf. Amos v. City of Page*, 257 F.3d 1087, 1094 (9th Cir. 2001) (noting that alleged discrimination by City was no less malevolent under section 1983 just because the City perceived the Plaintiff to be Native American when he was actually Caucasian); *LaRocca v. Precision Motor Cars, Inc.*, 45 F. Supp. 2d 762, 770 (D. Neb. 1999) (finding that employer's incorrect perception of employee's race was inconsequential for a finding of discrimination because the mistaken race traits were the foundation of the harassment).

Defendants argue still that, even if Ms. Mack knew of Ms. Santos's race, there is no evidence to suggest that Ms. Mack treated Ms. Santos poorly because of her race. In turn, Ms. Santos argues that racial discrimination may be inferred from the fact that (1) Ms. Mack treated similarly situated non-Asians better than Ms. Santos and (2) Ms. Mack discriminated against Asians other than Ms. Mack. Neither argument is persuasive.

---

[3] In *Robinson*, the Ninth Circuit ultimately concluded that the credibility of the alleged discriminators was not at issue because the plaintiff was unable to produce any evidence placing their credibility in doubt. *See Robinson*, 847 F.2d at 1317. *Robinson*, however, is factually distinguishable from the instant case. In *Robinson*, the alleged discriminators never saw the plaintiff's physical appearance and communicated with him solely by paper or other non-face-to-face means. Clearly, that was not the case here -- *i.e.*, Ms. Mack saw Ms. Santos in person on multiple occasions.

1    With respect to the first argument, the unrebutted evidence submitted by Defendants shows
2 that Ms. Mack treated all students poorly, not just Ms. Santos. For example, Ms. Mack's colleagues
3 all testified that they have witnessed Ms. Mack enforce the library computer-use guidelines as to
4 student of all races. *See, e.g.*, Singer Depo. at 49-50 (testifying Ms. Mack enforced the library rules
5 against students "no matter what their race"); Chin Depo. at 39, 42 (testifying that she saw Ms.
6 Mack approach non-Asian students to enforce the computer policy rules; also claiming that she
7 received complaints about Ms. Mack from African American students). Similarly, two students of
8 Merritt College also provided testimony that Ms. Mack treated all students poorly, not just Ms.
9 Santos.[4] *See, e.g.*, Docket No. 88 Attach. 1 (an African American student, testifying that she felt that
10 Ms. Mack picked on her and that Ms. Mack had a "poor and nasty attitude").

11    At the hearing, Ms. Santos tried to combat this evidence by arguing that, even if all students
12 were treated poorly by Ms. Mack, Ms. Santos -- unlike non-Asians -- was subjected to repeated
13 attacks by Ms. Mack. There is no evidence, however, to support this contention. In fact, the
14 evidence of record indicates otherwise. In his deposition, Nghiem Thai, one of Ms. Mack's
15 colleagues, specifically testified that Ms. Mack has approached the same student (other than Ms.
16 Santos) more than one time. *See* Thai Depo. at 14, 19. Thus, simply put, Ms. Santos has failed to
17 present any evidence countering Defendants' evidence that Ms. Santos was treated -- or mistreated --
18 like others of different races. Under the *McDonnell Douglas* shifting burden analysis, Ms. Santos
19 has failed to make a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792
20 (1973).

21    As for the second argument, the Court notes, as a preliminary matter, that it does not agree
22 with Defendants' suggestion that there can be no inference of racial discrimination without
23 differential treatment. Differential treatment is only one way of proving racial discrimination. *See,*
24 *e.g.*, *Harris v. Hays*, 452 F.3d 714, 718 (8th Cir. 2006) (stating that "[o]ne way for the claimant to
25 establish . . . the defendant's intent to discriminate, is to show that he was treated differently from

---

[4] On the flip side, one Asian student (Filipino, in fact) testified that he has found Ms. Mack to be courteous and polite. *See* Norona Decl. ¶ 5. He also testified that he has observed Ms. Mack calmly approach students of all races to enforce the library policies. *See* Norona Decl. ¶ 7.

7

similarly situated nonmembers of the protected class"); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (stating that "[a] showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination, but it 'is only one way to discharge that burden'"); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (stating that the *McDonnell Douglas* test provides "one way" to raise an inference of discrimination).

The Court also takes note that some courts have concluded that an inference of impermissible motive against the plaintiff may be made when there is evidence of discrimination against other members of the same protected class. *See, e.g.*, *Zafar Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008) (stating that "'behavior toward or comments directed at other employees in the protected group' is one type of circumstantial evidence that can support an inference of discrimination"). However, evidence of discrimination against others does not automatically create an inference of discrimination against the plaintiff. Only where the former has a nexus to the latter may the evidence of discrimination against others be considered relevant.[5] *See id.* (stating that "whether such evidence is relevant depends on a variety of factors, including 'how closely related the evidence is to the plaintiff's circumstances and theory of the case'"); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 n.2 (10th Cir. 1990) (indicating that evidence of other discrimination should be capable of being logically or reasonably tied to the discrimination against the plaintiff).

In the instant case, Ms. Santos points to alleged discrimination by Ms. Mack against her Asian co-workers, Mr. Thai and Ms. Chin. Mr. Thai's testimony, however, is of no real assistance to Ms. Santos. Although, in his deposition, Mr. Thai agreed with Ms. Chin's statement that he and Ms. Chin "get the brunt" of Ms. Mack's "abuse," Thai Depo. at 21, he ultimately concluded that Ms. Mack's behavior toward them was not based on race. *See* Thai Depo. at 8-10. That leaves the Court with Ms. Chin's testimony as the only evidence of discrimination by Ms. Mack. In her deposition,

---

[5] Notably, this approach -- *i.e.*, requiring a nexus -- is also used in determining whether an inference of discrimination may be made when the plaintiff has suffered an adverse employment action and where the alleged discriminator has made a discriminatory remark. *See, e.g.*, *Marques v. Bank of Am.*, 59 F. Supp. 2d 1005, 1019 (N.D. Cal. 1999) (noting that one factor considered by the Ninth Circuit in determining whether a discriminatory remark constitutes more than a "stray remark" is "whether the comment is related in time and subject matter to the decisional process").

1 Ms. Chin testified that she strongly believes that Ms. Mack is racially discriminatory against her and
2 other Asians "because there are four other [librarians], three who are not [Asian], and [Ms. Mack]
3 doesn't get on their case like she does on us." Chin Depo. at 21.

4 There are several problems with this evidence. First, the evidence of racial discrimination
5 against Ms. Chin is quite thin -- consisting solely of Ms. Chin's testimony that Ms. Mack "gets on
6 the case" of the Asian librarians more than the non-Asian librarians. The strength of this evidence is
7 particularly problematic in light of Mr. Thai's testimony suggesting that the problems between Ms.
8 Chin and Ms. Mack were based on the hierarchy of supervisory roles in the library, not race. *See*
9 Thai Depo. at 8, 16. Ms. Chin does not back her belief with specific evidence of actual disparate
10 treatment. In *Stopka v. Alliance of American Insurers,* 141 F.3d 681 (7th Cir. 1998), the Seventh
11 Circuit noted that

> evidence of discrimination against other employees is relevant only if *the plaintiff is able to show that the action taken against the other employee was based on discrimination*. Accordingly, this court has held that, when the evidence appears to be of slight probative value, district courts may properly exclude it under Rule 403 to avoid a series of collateral "trials within the trial" which would result in confusion and undue delay.

16 *Id.* at 687 (emphasis added). Given the lack of substantiality of Ms. Chin's evidence and the
17 concern here that such evidence would require a trial within a trial, it is doubtful that this evidence
18 would even be admitted.

19 Second, even if admitted, Ms. Santos is that she has made no showing how the alleged
20 discrimination against Ms. Chin has any nexus to the alleged discrimination against her. There is
21 nothing to indicate, for example, that the discrimination against Ms. Chin and Ms. Santos occurred
22 in the same time period, *see* Chin Depo. at 12-14 (testifying that problems with Ms. Mack began
23 soon after they started to work together in 2002), or that the circumstances of the discrimination
24 were similar. Indeed, the situations involving Ms. Mack and the situations involving Ms. Chin are
25 facially quite different, the former involving accusations of improper computer use and the latter
26 involving competition over management roles in the library. *See Spulak*, 894 F.2d at 1156
27 (indicating that evidence of discrimination against other employees may be used only if the plaintiff
28

9

is able to demonstrate the relevance of that evidence by showing that it can "logically be reasonably tied" to the alleged misconduct at issue).

In sum, Ms. Santos has failed to create a genuine dispute of material fact that Ms. Mack's mistreatment of her was based on race. Ms. Santos has provided no evidence to support her claim that she, and not non-Asians, was subjected to multiple attacks by Ms. Mack. In addition, she has failed to establish that there is a sufficient nexus between the alleged discrimination against her and the conclusory testimony of Ms. Chin about discrimination against Asian employees from which discrimination here may reasonably be inferred. Accordingly, the Court concludes that Ms. Mack is entitled to summary judgment on the § 1981 claim.

### C.     Title VI Claim for Race Discrimination

With respect to Peralta, Ms. Santos has asserted only a claim for race discrimination pursuant to Title VI. *See* 42 U.S.C. § 2000d (providing that "[n]o person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"). According to Ms. Santos, Peralta should be held liable for race discrimination because (1) Ms. Mack's discrimination may be imputed to the District and because (2) the District failed to supervise and rectify Ms. Mack's conduct, and even decided to transfer Ms. Mack from Merritt to Laney College even after Ms. Santos had transferred to Laney College. Both theories are predicated on the claim that Ms. Mack in fact did engage in discrimination against Ms. Santos. As noted above, no sufficient evidence of such was established and hence the Title VI claim must fall with the § 1981 claim. Moreover, there are additional reasons for granting summary judgment on the Title VI claim.

#### 1.     Vicarious Liability

Ms. Santos's first theory is one of vicarious, or indirect liability. However, the Supreme Court has expressly held that an entity may not be held vicariously liable for an employee's conduct pursuant to Title IX. *See Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 285 (1998) (holding that a plaintiff may not use Title IX to hold a district liable for an employee's harassment of a student based on the principles of *respondeat superior* or vicarious liability). Although the claim

here is based on Title VI and not Title IX, the only substantive difference between the statutes is that the latter protects against sex discrimination while the former protects against race discrimination. *See, e.g., Grove City Coll. v. Bell*, 465 U.S. 555, 556 (1984) ("The drafters of Title VI . . . approved identical language, [and] we discern no reason to believe that the Congressmen who voted for Title IX intended a different result."). Accordingly, the Court concludes that a theory of vicarious liability is not viable under Title VI, just as such a theory is not viable under Title IX.

2.  Direct Liability

As for Ms. Santos's theory of direct liability, the analysis is also guided by the Supreme Court's decision in *Gebser*. In *Gebser*, the Court held that a school district can be directly liable for discrimination by an employee where it (1) has actual knowledge of the discrimination and (2) acts with deliberate indifference to the discriminatory acts. *See Gebser*, 524 U.S. at 290 (holding that school district could not be held liable for alleged harassment of student by teacher unless the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge). Mere negligence is not enough.

In the instant case, there appears to be no evidence that Peralta had actual knowledge that Ms. Mack's conduct toward Ms. Santos was based on a racial animus. As noted above, while Ms. Santos submitted two "Unlawful Discrimination Complaint Forms" to Peralta, neither one made any mention of race discrimination. They simply referred to bullying or harassment by Ms. Mack. Similarly, while Ms. Santos states in her declaration that she complained to Ms. Ulrich about Ms. Mack,[6] *see* Santos Decl. ¶ 27, she does not say that she complained about race discrimination specifically.

The Court acknowledges that, in her DFEH complaint (dated January 13, 2007), Ms. Santos did claim race discrimination by Ms. Mack. But there is nothing in the record that indicates that Peralta had actual knowledge of the alleged discrimination as a result. There is nothing to establish,

---

[6] In *Gebser*, actual notice had to be given to an "appropriate person" who had the authority to take corrective action to end the discrimination. *See Gebser*, 524 U.S. at 290 (citing 20 U.S.C. § 1682). Here, both parties treat Ms. Ulrich as an "appropriate person" and have made no statement to suggest otherwise.

for example, that a copy of the DFEH complaint was sent to Peralta or even that a copy of the DFEH's response to Ms. Santos was given to the District.  Moreover, the complaint did not specifically allege facts establishing racial discrimination.

Even if the face of the DFEH complaint were enough to raise an inference of actual knowledge on the part of the District, Ms. Santos must still, under *Gebser*, show that it thereafter acted with deliberate indifference to the discrimination by Ms. Mack.  The record reflects that Peralta conducted an investigation into Ms. Mack's conduct (whether as a result of the "Unlawful Discrimination Complaint Forms" or the DFEH complaint).  Ms. Santos contends that the investigation was not properly done because it was completed without her having been interviewed.  The problem with this argument is that Ms. Santos was never interviewed because she refused to be interviewed.  As she admitted in her deposition, when the investigator called her to interview her, she refused and told the investigator that he should be interviewing Ms. Mack, not her.  *See* Santos Depo. at 138.  The investigator concluded Ms. Mack was over aggressive in enforcing the library rules but found no basis for finding she did so on a discriminatory basis.

As a last attempt, Ms. Santos argues that Peralta acted with deliberate indifference because it transferred Ms. Mack from the Merritt College library to the Laney College library after Ms. Santos had transferred to Laney College.  But there is nothing to show that Peralta knew or even should have known that Ms. Santos was at Laney College at the time that it transferred Ms. Mack.  To the extent Ms. Santos suggests that the District should have checked to see where Ms. Santos was a student before it moved Ms. Mack, that was at best negligence by Peralta, but not deliberate indifference.  Moreover, Peralta provided a nondiscriminatory reason as to why it transferred Ms. Mack to Laney College -- more specifically, because (1) she had a medical condition and, under state and federal disability laws, Peralta was required to provide a reasonable accommodation for her disability, and because (2) Laney College was the only school in the District that had an open position for a tenured librarian.  *See* Ulrich Decl. ¶¶ 3-4.  Ms. Santos has tendered no evidence to suggest that this reason was pretextual or that her transfer was intended to or knowingly would facilitate further harassment by Ms. Mack.

Accordingly, the Court concludes that there is no genuine dispute of fact that Peralta either had actual knowledge of discrimination or that it acted with deliberate indifference to any discrimination. And, as noted above, there is no substantial evidence that Ms. Mack in fact engaged in racial or ethnic discrimination against Ms. Santos. Peralta is therefore entitled to summary judgment on the Title VI claim.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in its entirety. The Clerk of the Court is directed to enter judgment in this case consistent with this opinion and close the file in this case.

This order disposes of Docket No. 84.

IT IS SO ORDERED.

Dated: November 13, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge